O & M INDUSTRIES v. SMITH ENGINEERING COMPANY, A/K/A SMITH ENVIRON-
MENTAL CORPORATION; KURZ TRANSFER PRODUCTS, LIMITED PARTNER-
SHIP, AND KURZ AND PARTNERS, LIMITED PARTNERSHIP

No. 502PA04

(Filed 27 January 2006)

### Liens— materialman—subcontractor against principal

Summary judgment was correctly granted for a subcontractor seeking payment from the principal (defendant) under a Notice of Claim of Lien after the general contractor encountered financial difficulty and stopped work on the project, and the defendant claimed a set-off for the cost of completion. Defendant

**O & M INDUS. v. SMITH ENG'R CO.**

[360 N.C. 263 (2006)]

had a duty under N.C.G.S. § 44A-20 to retain funds up to the total amount of the noticed lien; any option to set off the cost of completing the project against the retained amount would not negate defendant's personal liability to plaintiff.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous, unpublished decision of the Court of Appeals, 165 N.C. App. 705, 601 S.E.2d 330 (2004), reversing an order granting summary judgment for plaintiff entered on 15 November 2002 by Judge Christopher M. Collier in Superior Court, Davidson County. Heard in the Supreme Court 18 October 2005.

*Hendrick & Bryant, LLP, by Matthew H. Bryant and T. Paul Hendrick, for plaintiff-appellant.*

*Smith Currie & Hancock, LLP, by Harry R. Bivens, for defendant-appellee Kurz Transfer Products, L.P.*

*Erwin and Eleazer, P.A., by L. Holmes Eleazer, Jr. and Fenton T. Erwin, Jr., Counsel for American Subcontractors Association of the Carolinas, amicus curiae.*

*Vann & Sheridan, LLP, by James R. Vann and Nan E. Hannah, for Southeastern Association of Credit Management, Inc., amicus curiae.*

PARKER, Justice.

O & M Industries ("plaintiff") instituted this action against Smith Engineering ("Smith") and Kurz Transfer Products, LP ("defendant") under N.C.G.S. § 44A-18, the materialman's statutory lien. The issue before the Court for review is whether the Court of Appeals properly reversed the trial court's entry of summary judgment for plaintiff under N.C.G.S. § 44A-20. For the reasons stated herein, we reverse the decision of the Court of Appeals and remand for consideration of additional issues.

Defendant operates a manufacturing facility in Lexington, North Carolina, on property leased from an affiliate company. On or about 14 December 2000, defendant contracted with Smith for the design and construction of a regenerative thermal oxidizer system. Smith subcontracted with plaintiff for the construction and delivery of a three canister thermal oxidizer. Plaintiff performed by shipping the oxidizer in June 2001. Believing Smith to be in financial difficulty, plaintiff served a Notice of Claim of Lien on defendant on 8

**O & M INDUS. v. SMITH ENG'R CO.**

[360 N.C. 263 (2006)]

June 2001 in the amount of $113,655.00. The evidence tends to show that defendant was aware of Smith's financial position.

After receiving the Notice, defendant made two payments to Smith, one for $164,831.25 on 6 July 2001, and one for $150,000.00 on 1 August 2001. Smith ceased work on the project on 13 August 2001, and defendant's estimates of its costs to complete ranged at various times from $25,000 to over $415,000. On 22 August 2001, Smith informed defendant that it had filed for bankruptcy. Plaintiff served another Notice of Claim of Lien on defendant on 23 August 2001 in the amount of $127,392.12. Plaintiff instituted this action when it did not receive payment from either defendant or Smith. Plaintiff obtained a default judgment against Smith.

Thereafter, plaintiff moved for summary judgment, alleging that defendant was personally liable as the result of the two post-Notice payments to Smith. Defendant also moved for summary judgment, arguing *inter alia* that the additional costs necessary to complete the project barred plaintiff from recovery. The trial court denied defendant's motion, allowed plaintiff's motion, entered judgment against defendant in the amount of $113,655.00 plus interest, and awarded plaintiff attorney's fees and costs.

On appeal to the Court of Appeals, defendant argued that unsettled questions concerning the sufficiency of its retained funds and its costs to complete the project raised issues of material fact, thereby making summary judgment improper. Defendant specifically claimed that it was not obligated to pay plaintiff in that the cost to complete the project would exceed the amount otherwise owed to Smith. Defendant also argued issues of estoppel and novation based on a letter sent by plaintiff to Smith dated 15 June 2001, and on plaintiff's 23 August 2001 Notice of Claim of Lien sent to defendant, respectively. Relying upon *Lewis-Brady Builders Supply, Inc. v. Bedros*, 32 N.C. App. 209, 231 S.E.2d 199 (1977) and *Watson Electrical Construction, Co. v. Summit Cos.*, 160 N.C. App. 647, 587 S.E.2d 87 (2003), the Court of Appeals agreed with defendant that a determination of defendant's costs to complete the project was necessary to calculate the appropriate setoff amount and reversed the trial court's entry of summary judgment for plaintiff. The Court of Appeals opinion did not reach defendant's estoppel or novation arguments.

In its appeal to this Court, plaintiff contends that the Court of Appeals failed to address and properly apply the applicable lien statutes. We agree. We note, however, that we express no opinion on

defendant's estoppel or novation arguments and assume *arguendo* for purposes of our discussion herein that plaintiff's 8 June 2001 notice of lien was valid.

The North Carolina Constitution mandates that the General Assembly "shall provide by proper legislation for giving to mechanics and laborers an adequate lien on the subject-matter of their labor." N.C. Const. art. X, § 3. To satisfy this mandate the legislature enacted statutes which are now codified in Chapter 44A of the General Statutes. In *Electric Supply Co. of Durham v. Swain Electrical Co.*, 328 N.C. 651, 403 S.E.2d 291 (1991), this Court, recognizing the central role played by credit in the construction industry, articulated the importance of an adequate lien for subcontractors and suppliers of materials and labor:

> Suppliers . . . provide labor and materials to contractors and subcontractors who perform their portion of the work on a project. Since the contractor or subcontractor is generally not paid until the job, or a portion of it, is completed (and is probably unable to pay until it, in turn, is paid), their suppliers extend labor and materials to them on credit. An adequate lien is necessary to encourage responsible extensions of credit, which are necessary to the health of the construction industry.

*Id.* at 659, 403 S.E.2d at 296.

The statutory provisions at issue in this case are N.C.G.S. §§ 44A-18 and 44A-20.[1] Section 44A-18 provides in relevant part:

Upon compliance with this Article:

(1) A first tier subcontractor who furnished labor, materials, or rental equipment at the site of the improvement shall be entitled to a lien upon funds which are owed to the contractor with whom the first tier subcontractor dealt and which arise out of the improvement on which the first tier subcontractor worked or furnished materials.

. . . .

(5) The liens granted under this section shall secure amounts earned by the lien claimant as a result of his having furnished labor, materials, or rental equipment at the site of the im--

---

1. This statute was amended effective 1 October 2005. As this action was commenced before that date, the prior statute controls. *See In re Will of Mitchell*, 285 N.C. 77, 79-80, 203 S.E.2d 48, 50 (1974).

provement under the contract to improve real property, whether or not such amounts are due and whether or not performance or delivery is complete.

(6) A lien upon funds granted under this section is perfected upon the giving of notice in writing to the obligor as provided in G.S. 44A-19 and shall be effective upon the obligor's receipt of the notice. The subrogation rights of a first, second, or third tier subcontractor to the lien of the contractor created by Part 1 of Article 2 of this Chapter are perfected as provided in G.S. 44A-23.

N.C.G.S. § 44A-18 (2003).

Section 44A-20 sets forth the duties of an owner upon receipt of a Notice of Claim of Lien:

(a) Upon receipt of the notice provided for in this Article the obligor shall be under a duty to retain any funds subject to the lien or liens under this Article up to the total amount of such liens as to which notice has been received.

(b) If, after the receipt of the notice to the obligor, the obligor shall make further payments to a contractor or subcontractor against whose interest the lien or liens are claimed, the lien shall continue upon the funds in the hands of the contractor or subcontractor who received the payment, and in addition the obligor shall be personally liable to the person or persons entitled to liens up to the amount of such wrongful payments, not exceeding the total claims with respect to which the notice was received prior to payment.

(c) If an obligor shall make a payment after receipt of notice and incur personal liability therefor, the obligor shall be entitled to reimbursement and indemnification from the party receiving such payment.

. . . .

*Id.* § 44A-20 (2003). In the present case defendant is an "obligor" under the statutory definition. *See id.* § 44A-17(3) (2003).

In interpreting a statute, the Court must first ascertain the legislative intent in enacting the legislation. *Elec. Supply Co. of Durham*, 328 N.C. at 656, 403 S.E.2d at 294. The first consideration in determining legislative intent is the words chosen by the legisla-

**O & M INDUS. v. SMITH ENG'R CO.**

[360 N.C. 263 (2006)]

ture. *Brown v. Flowe,* 349 N.C. 520, 522, 507 S.E.2d 894, 895-96 (1998). When the words are clear and unambiguous, they are to be given their plain and ordinary meanings. *Id.* The Court may also consider the policy objectives prompting passage of the statute and should avoid a construction which defeats or impairs the purpose of the statute. *Elec. Supply Co. of Durham,* 328 N.C. at 656, 403 S.E.2d at 294.

The materialman's lien statute is remedial in that it seeks to protect the interests of those who supply labor and materials that improve the value of the owner's property. *See Elec. Supply Co. of Durham,* 328 N.C. at 659, 403 S.E.2d at 296; *see also Carolina Builders Corp. v. Howard-Veasey Homes, Inc.,* 72 N.C. App. 224, 229, 324 S.E.2d 626, 629-30, *disc. review denied,* 313 N.C. 597, 330 S.E.2d 606 (1985). A remedial statute must be construed broadly "in the light of the evils sought to be eliminated, the remedies intended to be applied, and the objective to be attained." *Puckett v. Sellars,* 235 N.C. 264, 267, 69 S.E.2d 497, 499 (1952).

Under Chapter 44A, Section 18 the first tier subcontractor is entitled to a lien upon funds owed to the contractor with whom the first tier subcontractor dealt arising out of the improvements on which the first tier subcontractor worked or furnished materials. N.C.G.S. § 44A-18(1). This lien on funds secures amounts earned by the lien claimant for labor or materials furnished, whether or not performance or delivery is complete. *Id.* § 44A-18(5). The lien upon funds is perfected upon giving of the notice of claim of lien in writing to the obligor in accordance with N.C.G.S. § 44A-19 and is effective upon the obligor's receipt of the notice. *Id.* § 44A-18(6).

The statutory scheme set out in Chapter 44A, Section 20 to protect the subcontractor's lien on funds once notice has been given provides: first, that the obligor shall retain funds up to the total amount of liens as to which notice has been given, *id.* § 44A-20(a); second, that the obligor shall be personally liable if the obligor makes further payments to a contractor or subcontractor against whose interest the lien or liens are claimed; *id.* § 44A-20(b); and third, that an obligor who makes a payment after receipt of notice and incurs personal liability is entitled to reimbursement and indemnification from the party receiving such payment; *id.* § 44A-20(c). Significantly, this section of the statute makes no provision for a setoff against the retained funds in the event the cost of completing the project exceeds the amount of retained funds.

The determinative question on this appeal is whether the payments, totaling $314,831.25, made by defendant to Smith on 6 July

**O & M INDUS. v. SMITH ENG'R CO.**

[360 N.C. 263 (2006)]

2001 and 1 August 2001 triggered personal liability on the part of defendant. Based on the principles of statutory interpretation outlined above, if the notice of lien is effective, the answer to this question must be in the affirmative. After stating that the lien follows the funds into the hands of the contractor or subcontractor to whom payment is made after notice, the statute says plainly and unequivocally: "and in addition the obligor shall be personally liable to the person or persons entitled to liens." *Id.* § 44A-20(b). The parties do not dispute that defendant has retained approximately $243,713, an amount exceeding the claimed lien. However, contrary to defendant's position, the mere retention of funds equal to or in excess of the amount of the lien is not sufficient to avoid personal liability.

The "retain funds" prong of subsection 44A-20(a) and the "further" or "wrongful payments" prong of subsection 44A-20(b) are discrete. In the absence of the "wrongful payments" made subsequent to a Notice of Lien on Funds as described in N.C.G.S. § 44A-20(b), personal liability on the part of the obligor is not triggered. However, in the event of an obligor's wrongful payment, the lien continues upon the funds, and the obligor becomes personally liable to the noticing party up to the amount of the wrongful payment, not exceeding the total claims with respect to which notice was received before the payment. *Id.* § 44A-20(b).

In keeping with the mandate that mechanics and laborers be provided an adequate lien on the subject matter of their labor, the statute creates a risk shifting mechanism for subcontractors. Prior to notice to the obligor, the subcontractor bears the risk of loss or nonpayment by the general contractor. When notice is served, the risk shifts to the obligor to the extent that the obligor is holding funds. With this notice the burden of assuring payment of the subcontractor's lien shifts to the obligor who owns the project, is receiving construction funds, and receives the benefit of the subcontractor's labor and materials. The owner is, thus, put on notice of a general contractor's potential breach and is apprised of the need to take precautions necessary to protect the project and to ensure that subcontractors remain on the job.

The court below applied a setoff analysis. However, the Court of Appeals' reliance on *Lewis-Brady Builders* and *Watson Electrical* was misplaced.

In *Lewis-Brady Builders*, the plaintiff subcontractor appealed from the trial court's order, which granted relief to plaintiff against

the general contractor but denied recovery against the owner. 32 N.C. App. at 210, 231 S.E.2d at 200. The Court of Appeals affirmed the judgment, finding that because the owner spent all funds otherwise due under the contract to complete the project, no subcontractor recovery was possible. *Id.* at 212-13, 231 S.E.2d at 201. *Lewis-Brady Builders* is, however, distinguishable from the present case, in that the owner in *Lewis-Brady Builders* made no further payments to the general contractor subsequent to its receipt of the subcontractor's Notice of Claim of Lien. Rather, the owner sought new bids for completion of the project after failing to negotiate terms with the original general contractor. *See id.* at 210, 231 S.E.2d at 199-200.

The plaintiff subcontractor in *Watson Electrical* filed a Notice of Claim of Lien approximately six weeks after defendant owners' last payment to the original general contractor on the project, but several weeks before the defendant owners terminated the contractor for defaulting on the contract. 160 N.C. App. at 649, 587 S.E.2d at 90. The basis on which the Court of Appeals affirmed summary judgment in favor of the owners was a finding by an arbitrator that the setoff exceeded the amount due under the contract. *See id.* at 651-52, 587 S.E.2d at 91-92. Again, the owners made no post-Notice payments to the general contractor, but arranged completion of the project with another general contractor.

In this case, defendant had a duty under Section 44A-20 to retain funds up to the total amount of the noticed lien. Defendant made further payments to Smith, thereby triggering personal liability up to the amount of the payments, not to exceed the amount of the claims noticed. N.C.G.S. § 44A-20(b). Defendant's option, if any, to set off its cost to complete the project against the retained amount would not negate defendant's personal liability to plaintiff. *Id.* Defendant's argument that under N.C.G.S. § 44-18(1), the lien only attached to the amount owed the contractor and that nothing was owed to the contractor must fail.

The critical time for determining whether an amount is owed for purposes of N.C.G.S. § 44A-18(1) is when the obligor receives the notice of lien. *Id.* § 44A-18(6). In this case, defendant admitted making payments totaling $314,831.25 to Smith after receiving plaintiff's Notice of Claim of Lien for $113,655.00. By making the payments, defendant acknowledged that it owed money to the contractor. *See Whitley's Elec. Serv., Inc. v. Sherrod*, 293 N.C. 498, 505, 238 S.E.2d 607, 612 (1977).

Were this Court to adopt the Court of Appeals' analysis, the purpose of the statute, which is to protect mechanics and materialmen, would be eviscerated. The reason the obligor becomes personally liable by making a payment after receiving a notice of claim of lien is that the obligor is then on notice that a potential problem exists and, having control of the funds, is in a position to avoid or rectify the problem.

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C.G.S. § 1A-1, Rule 56(c) (2003).

Under our holding today, unless defendant's remaining assignments of error asserting estoppel and novation have merit, questions concerning the sufficiency of the retained funds and defendant's cost to complete are not relevant and do not raise genuine issues of material fact. Accordingly, we reverse and remand to the Court of Appeals for consideration of defendant's remaining assignments of error.

REVERSED and REMANDED.