JERRY A. WIGGS, Plaintiff v. EDGECOMBE COUNTY; and EDGECOMBE COUNTY BOARD OF COMMISSIONERS, in their Official Capacity, Defendants

No. COA05-1330

(Filed 1 August 2006)

**Pensions and Retirement; Police Officers— county law officer—retirement—special separation allowance—cessation after employment by another entity—impairment of contractual obligation**

The trial court did not err by enjoining defendant county and its board of commissioners from ceasing payment of the special separation allowance to plaintiff county law officer after the officer retired, began receiving his retirement benefits and special separation allowance, and was reemployed by another member of the Local Government Employees Retirement System, and defendant board of commissioners thereafter passed a resolution that special separation allowances for retired local officers would cease upon their reemployment by another local government

entity, because (1) defendant county had no written policy regarding cessation of the special separation allowance upon an officer's reemployment at the time plaintiff retired and began receiving the allowance; (2) a county officer has a contractual right to receive a special separation allowance pursuant to N.C.G.S. § 143-166.42 absent the county's adoption of a resolution providing otherwise prior to the vesting of the officer's contractual right; (3) defendant board's resolution impaired the obligation of the State's contract with plaintiff under the Local Government Employees Retirement System to provide a separation allowance pursuant to N.C.G.S. § 143-166.42; and (4) this impairment was not reasonable and necessary to serve an important public purpose. U.S. Const. art. I, § 10; N.C. Const. art. I, § 19.

Judge GEER dissenting.

Appeal by defendants from an order entered 7 September 2005 by Judge Quentin T. Sumner in Edgecombe County Superior Court. Heard in the Court of Appeals 12 April 2006.

*Shanahan Law Group, by Kieran J. Shanahan, for plaintiff-appellee.*

*Womble Carlyle Sandridge & Rice, PLLC, by Mark A. Davis, for defendants-appellants.*

JACKSON, Judge.

Edgecombe County and Edgecombe County Board of Commissioners ("defendants") appeal an order granting summary judgment in favor of Jerry Wiggs ("plaintiff") on plaintiff's claims for declaratory and injunctive relief, denying defendants' motion for summary judgment, and enjoining defendants from terminating payment of the special separation allowance. The trial court certified the order as a final judgment on 7 September 2005.

Plaintiff was employed as a law enforcement officer by the County of Edgecombe from 1 May 1976 to 31 March 2004. The County of Edgecombe is a member of the North Carolina Local Government Employees Retirement System ("Retirement System"). On 1 March 2004, plaintiff notified the Retirement System and the Edgecombe County Administrative Office of his intention to retire on 1 April 2004. On 31 March 2004, the Retirement System certified plaintiff as having thirty years of creditable service with the Retirement System. Plain-

tiff retired from his employment pursuant to North Carolina General Statutes, section 128-21(21) (2005) on 1 April 2004. On 1 April 2004, plaintiff began receiving his retirement benefits and his special separation allowance. Plaintiff continues to receive his special separation allowance since instituting this action.

In May 2004, plaintiff sought employment with the Raleigh-Durham Airport Authority, a member of the Retirement System. Upon advice from the Raleigh-Durham Airport Authority, plaintiff contacted Edgecombe County Manager Lorenzo Carmon ("Carmon") regarding the possible effect of plaintiff's re-employment with the Raleigh-Durham Airport Authority. When plaintiff contacted Carmon, the County of Edgecombe had no written policy regarding the cessation of the special separation allowance upon re-employment with an employer who is a member of the Retirement System.

On 7 June 2004, at defendants' public meeting, Carmon informed defendants that plaintiff had asked to be employed by another member of the Retirement System, and to continue to receive his special separation allowance. Defendants instructed Carmon to draft a resolution that addressed the cessation of the special separation allowance (the "Resolution"). On 12 July 2004, defendants adopted the Resolution. The Resolution stated, in pertinent part, that:

> In accordance with the action of the North Carolina General Assembly (G.S. 143-166.42), The County of Edgecombe will determine the eligibility of an applicant for the Special Separation Allowance for law enforcement officers and the following terms and conditions for that allowance will apply:
>
> . . . .
>
> F. The separation allowance will terminate under the following conditions:
>
> 1. Upon retiree reaching age 62; OR
>
> 2. Upon retiree's death; OR
>
> 3. Upon retiree's re-employment in any capacity (fulltime, part time, temporary, permanent, contractual, etc.) by any local government participating in the NC Local Government Employees Retirement System.
>
> G. If the separation allowance is terminated due to retiree's re-employment, it will not be re-instated by Edgecombe County,

regardless of the length of service with retiree's new employer. However, the retiree may become entitled to a separation allowance from the new employer by working as a law enforcement officer a sufficient number of years to meet minimum eligibility requirements for the allowance.

H. The retiree shall notify Edgecombe County immediately if he/she is re-employed as described in Section F.3 and the County will review the re-employment to determine if there is any conflict pursuant to Section F.3. Any attempt to conceal such re-employment for the purpose of avoiding termination of the separation allowance shall constitute fraud.

On 4 October 2004, plaintiff filed a complaint against defendants alleging, *inter alia*, breach of contract, breach of fiduciary duty, bill of attainder, and seeking declaratory relief and a preliminary injunction. Defendants filed a timely answer denying plaintiff's allegations, and asserted the affirmative defenses of failure to mitigate and immunity. Plaintiff and defendants both filed motions for summary judgment.

After a hearing on the motions for summary judgment, on 7 September 2005, the Honorable Quentin T. Sumner entered an order granting plaintiff's motion for summary judgment for plaintiff's claims for declaratory and injunctive relief, denying defendants' motion for summary judgment, and enjoining defendants from applying or enforcing the Resolution. We agree.

On appeal, defendants argue that they were entitled to summary judgment because: (1) the Resolution lawfully precludes plaintiff from receiving the special separation allowance upon his re-employment with another member of the Retirement System; (2) the Resolution was reasonable and necessary to serve an important public purpose; and (3) defendants did not violate the Bill of Attainder Clauses in either the United States or North Carolina Constitution.

We first address whether the Resolution lawfully precludes plaintiff from receiving the special separation allowance upon his re-employment with another member of the Retirement System and whether the Resolution was reasonable and necessary to serve an important public purpose. Defendants contend that *Campbell v. The City of Laurinburg*, 168 N.C. App. 566, 608 S.E.2d 98 (2005), controls in this case. We hold that *Campbell* is distinguishable.

## WIGGS v. EDGECOMBE CTY.

[179 N.C. App. 47 (2006)]

In *Campbell*, in 1991, the Laurinburg City Council, as the governing body, established that any officer who was receiving the special separation allowance would forfeit the allowance upon employment by another local government or agency thereof. *Campbell*, 168 N.C. App. at 568, 608 S.E.2d at 98. On 30 August 1999, after thirty years of service, the plaintiff retired from the City of Laurinburg Police Department and began receiving a special separation allowance pursuant to North Carolina General Statutes, section 143-166.42.[1] *Id.* at

1. N.C. Gen. Stat. § 143-166.42 (2005) provides that "[o]n or after January 1, 1987, the provisions of G.S. 143-166.41 shall apply to all eligible law-enforcement officers as defined by G.S. 128-21(11b) or G.S. 143-166.50(a)(3) who are employed by local government employers, except as may be provided by this section. As to the applicability of the provisions of G.S. 143-166.41 to locally employed officers, the governing body for each unit of local government shall be responsible for making determinations of eligibility for their local officers retired under the provisions of G.S. 128-27(a) and for making payments to their eligible officers under the same terms and conditions, other than the source of payment, as apply to each State department, agency, or institution in payments to State officers according to the provisions of G.S. 143-166.41."

On 15 July 1986, the North Carolina General Assembly enacted N.C. Gen. Stat. § 143-166.42, which states that local law enforcement officers retiring before age sixty-two are to receive the same special separation allowance afforded to State law enforcement officers under N.C. Gen. Stat. § 143-166.41. *Bowers v. City of High Point*, 339 N.C. 413, 415, 451 S.E.2d 284, 286 (1994).

N.C. Gen. Stat. § 143-166.41 provides, in pertinent part, that: "(a) Notwithstanding any other provision of law, every sworn law-enforcement officer as defined by G.S. 135-1(11b) or G.S. 143-166.30(a)(4) employed by a State department, agency, or institution who qualifies under this section shall receive, beginning on the last day of the month in which he retires on a basic service retirement under the provisions of G.S. 135-5(a) or G.S. 143-166(y), an annual separation allowance equal to eighty-five hundredths percent (0.85%) of the annual equivalent of the base rate of compensation most recently applicable to him for each year of creditable service. The allowance shall be paid in 12 equal installments on the last day of each month. To qualify for the allowance the officer shall:

(1) Have (i) completed 30 or more years or creditable service, or (ii) have attained 55 years of age and completed five or more years of creditable service; and

(2) Not have attained 62 years of age; and

(3) Have completed at least five years of continuous service as a law enforcement officer as herein defined immediately preceding a service retirement.

. . . .

(c) Payment to a retired officer under the provisions of this section shall cease at the first of:

(1) The death of the officer;

(2) The last day of the month in which the officer attains 62 years of age; or

(3) The first day of reemployment by any State department, agency, or institution, except that this subdivision does not apply to an officer returning to State employment in a position exempt from the State Personnel Act in an agency other than the agency from which that officer retired."

567, 608 S.E.2d at 98. In October 2001, the plaintiff became employed with the Scotland County Sheriff's Office, and the City ceased payment of the special separation allowance pursuant to their 1999 resolution and North Carolina General Statutes, section 143-166.42. Plaintiff sued, and we held that the City "acted congruent with its designated authority under N.C. Gen. Stat. § 143-166.42 and consistent with the General Assembly's intent in determining that for their law enforcement officers, becoming employed by another local government agency . . . would be grounds to cease payment of the separation allowance." *Id.* at 572, 608 S.E.2d at 101. Therefore, the City, as the governing body, ceased payments pursuant to their previously established and enacted resolution.

Here, however, defendants had not previously established and enacted any resolution pursuant to their authority under North Carolina General Statutes, section 143-166.42. In fact, defendants passed the Resolution in July 2004, over three months after plaintiff retired and began receiving his special separation allowance. We hold that North Carolina General Statutes, section 143-166.42 creates the option and affirmative duty for counties to enact a resolution in advance of a law enforcement officer's re-employment, in order to comply with the provisions of North Carolina General Statutes, section 143-166.41(c). In contrast to the dissenting opinion, we believe that this option and affirmative duty exists because the plain language of North Carolina General Statutes, section 143-166.42 states that "[a]s to the applicability of . . . G.S. 143-166.41 to locally employed officers, the governing body for each unit of local government *shall* be responsible for making determinations of eligibility for their local officers . . . ." (emphasis added). Thus, the General Assembly gave the governing body for each local government the discretion to act or not to act, creating an option and affirmative duty to enact a resolution. Nothing in the plain language of the statute or legislative history shows the General Assembly did not create the option for local governments to act. Otherwise, the General Assembly would have provided that the provision of North Carolina General Statutes, section 143-166.41 would apply to local governments as a matter of law.

The dissenting opinion also misinterprets our reading of North Carolina General Statutes, section 143-166.41(c). The issue at bar is whether plaintiff had a vested contract right, not whether the General Assembly intended North Carolina General Statutes, section 143-166.41(c) to apply to the local governmental officers such that a

local officer's special allowance would terminate automatically upon employment by the State, but would not terminate upon his commencing employment with another local governmental entity who was participating in the Retirement System. Accordingly, the dissenting opinion misstates and fails to accurately summarize our reasoning.

In addition, the dissenting opinion reasons that "the State has nothing to do with the funding of that allowance." In actuality, the special separation allowance is paid with county, not State, funds.[2] Thus, local and State officers are not treated the same, particularly because the source of funds for the county is tax revenues collected by the State for the county's benefit. Accordingly, county officers have a contractual right to receive a special separation allowance pursuant to North Carolina General Statutes, section 143-166.42, absent the county's adoption of a resolution providing otherwise prior to the county officers' vesting of their contractual right.

Because we hold that *Campbell* is distinguishable, the appropriate issue is whether a change in the law, which affected plaintiff's right to receive a special separation allowance, violated Article I, section 10 of the Constitution of the United States, which provides in part that "[n]o state shall . . . pass any . . . law impairing the obligation of contracts." U.S. Const. art. I, § 10.

We previously have held that plaintiffs, as members of the North Carolina Local Governmental Employees' Retirement System, have a contractual right to rely on the terms of the retirement plan if the terms existed at the moment their retirement rights became vested. *Simpson v. N.C. Local Gov't Employees' Retirement Sys.*, 88 N.C. App. 218, 224, 363 S.E.2d 90, 94 (1987), *aff'd per curiam*, 323 N.C. 362, 372 S.E.2d 559 (1988). Our Supreme Court later ruled that "when the General Assembly enacted laws which provided for certain benefits to those persons who were to be employed by the state and local governments and who fulfilled certain conditions, this could reasonably be considered by those persons as offers by the state or local government to guarantee the benefits if those persons fulfilled the

---

2. The General Assembly, in 1985 Session Laws, Chapter 1019, House Bill 2130, authorized *local governments* to levy an additional one-half cent sales tax, and provided for *local government* employers of law enforcement officers to contribute an amount of participating *local officers'* monthly compensation to the Supplemental Retirement Income Plan to be credited to the designated individual accounts of participating local officers, and for the special separation allowance for *local* officers pursuant to North Carolina General Statutes, section 143-166.42.

conditions." *Faulkenbury v. Teachers' & State Employees' Retirement Sys.*, 345 N.C. 683, 691, 483 S.E.2d 422, 427 (1997). Thus, Article 3 of Chapter 128 of the North Carolina General Statutes creates contractual obligations. *Simpson*, 88 N.C. App. at 225, 363 S.E.2d at 94. Article I, section 10 of the Constitution of the United States provides in part: "No state shall . . . pass any . . . law impairing the obligation of contracts." U.S. Const. art. I, § 10. Similarly, Article I, section 19 of the North Carolina Constitution, the "law of the land clause," provides that "no person shall be . . . disseized of his freehold, liberties, or privileges, or . . . deprived of his . . . property, but by the law of the land." N.C. Const. art. I, § 19. Our courts "reserve the right to grant relief against unreasonable and arbitrary state statutes under article I, section 19 of the Constitution of North Carolina in circumstances under which no relief might be granted by the due process clause of the fourteenth amendment[.]" *Lowe v. Tarble*, 313 N.C. 460, 462, 329 S.E.2d 648, 650 (1985). "Whether a state statute violates the law of the land clause 'is a question of degree and reasonableness in relation to the public good likely to result from it.' " *Id.* (quoting *In re Hospital*, 282 N.C. 542, 193 S.E.2d 729 (1973)). Thus, under the "law of the land" clause, the test is to weigh the degree and reasonableness of depriving plaintiff a special separation allowance against the public good likely to come from it. In conjunction with the test under the law of the land clause, if a contractual obligation arose under statute, a reviewing court must determine (1) whether the state's actions impaired an obligation of the state's contract, and (2) whether the impairment, if any, was reasonable and necessary to serve an important public purpose. *Simpson*, 88 N.C. App. at 225, 363 S.E.2d at 94.

Here, plaintiff began his employment with the Edgecombe County's Sheriff Office as a Deputy Sheriff on 1 May 1976. On 31 March 2004, the Retirement System certified plaintiff as having thirty years of creditable service with the Retirement System effective 31 March 2004. Therefore, on 31 March 2004, plaintiff's contractual right to receive the special separation allowance became a vested contractual right. As of that time, Edgecombe County had declined to exercise its authority pursuant to North Carolina General Statutes, section 143-166.42 to restrict plaintiff's ability to collect this special separation allowance should he choose to accept employment with any local government participating in the North Carolina Local Government Employees Retirement System.

On 12 July 2004, defendants enacted the Resolution that sought to rescind plaintiff's contractual rights under the Retirement System

to receive a special separation allowance. Therefore, defendants' Resolution impaired the obligation of the state's contract with plaintiff under the Retirement System to provide a special separation allowance pursuant to North Carolina General Statutes, section 143-166.42.

We now turn to whether the impairment was reasonable and necessary to serve an important public purpose. Defendants argue that the Resolution was necessary to conserve taxpayer money and to prevent "double dipping," meaning that the Resolution prohibits an employee from retiring from the Retirement System, to begin collecting the special separation allowance, and then become re-employed with the Retirement System. However, we note that defendants failed to articulate an important public purpose sufficient to justify impairing plaintiff's contractual right. Following the rationale in *Faulkenbury* and *Simpson*, the argument to improve the Retirement System, conserve taxpayer dollars, or to correct inequities in the Retirement System is insufficient to avoid the constitutional prohibition against impairing contractual rights. Therefore, we conclude that the Retirement System created a vested contractual right that defendants impaired through a means that was not reasonable and necessary to serve an important public purpose. Accordingly, defendants' assignment of error is overruled.

Because we hold that defendants' Resolution violated Art. I, section 10 of the Constitution of the United States, and Article I, section 19 of the North Carolina Constitution, we do not address whether defendants violated the Bill of Attainder Clauses in the United States or North Carolina Constitution. Accordingly, we affirm the trial court's entry of summary judgment.

AFFIRM.

Judge TYSON concurs.

Judge GEER dissents in a separate opinion.

GEER, Judge, dissenting.

The majority opinion overlooks the "well-established principle that municipalities, as creatures of the State, can exercise only that power which the legislature has conferred upon them." *Bowers v. City of High Point*, 339 N.C. 413, 417, 451 S.E.2d 284, 287 (1994).

Because of this principle, "[a] contract made by a municipality beyond its power is unenforceable." *Id.*, 451 S.E.2d at 288. The Supreme Court in *Bowers*, while construing precisely the statutes at issue in this case, stressed: "The issue thus becomes whether the legislature authorized the city to enter contracts for separation allowances" containing the terms that the plaintiffs were suing to enforce. *Id.* at 418, 451 S.E.2d at 288.

Accordingly, under *Bowers*, the majority opinion's conclusion that plaintiff had a vested contractual right to the special separation allowance skips over a critical fundamental question: whether the General Assembly has authorized a contract in which a local law enforcement officer could continue to receive the allowance although re-employed by another local governmental body. The majority opinion holds, without any analysis of legislative intent, "that North Carolina General Statutes, section 143-166.42 creates the option and affirmative duty for counties to enact a resolution in advance of a law enforcement officer's re-employment in order to comply with the provisions of North Carolina General Statutes, section 143-166.41(c)."

I believe that principles of statutory construction indicate that the General Assembly intended, when enacting N.C. Gen. Stat. § 143-166.42 (2005), to terminate a local law enforcement officer's special separation allowance upon that officer's re-employment by another employer participating in the North Carolina Local Governmental Employees' Retirement System ("Local Government Retirement System"). As a result, a county would not be authorized to enter into any contract with an officer in which the special separation allowance would continue despite re-employment. Without such authorization, Mr. Wiggs could have no contractual right, vested or otherwise, to such an allowance upon re-employment. Based on my construction of the statute, I would reverse the trial court's grant of summary judgment and, therefore, respectfully dissent.

N.C. Gen. Stat. § 143-166.41 (2005) provides for a special separation allowance for law enforcement officers employed by "a State department, agency, or institution" upon the officer's meeting certain requirements. N.C. Gen. Stat. § 143-166.41(c) sets out events that will result in cessation of the payment of that allowance, including the following:

> (c) Payment to a retired officer under the provisions of this section shall cease at the first of:

. . . .

(3) The first day of reemployment by any State department, agency, or institution, except that this subdivision does not apply to an officer returning to State employment in a position exempt from the State Personnel Act in an agency other than the agency from which that officer retired.

N.C. Gen. Stat. § 143-166.41(c).

In 1986, the General Assembly passed legislation making this special separation allowance available to certain local law enforcement officers. N.C. Gen. Stat. § 143-166.42. The legislature did not set out all the specifications regarding that allowance, but simply referenced N.C. Gen. Stat. § 143-166.41:

On and after January 1, 1987, the provisions of G.S. 143-166.41 shall apply to all eligible law-enforcement officers as defined by G.S. 128-21(11b) or G.S. 143-166.50(a)(3) who are employed by local government employers, except as may be provided by this section. As to the applicability of the provisions of G.S. 143-166.41 to locally employed officers, the governing body for each unit of local government shall be responsible for making determinations of eligibility for their local officers retired under the provisions of G.S. 128-27(a) and for making payments to their eligible officers *under the same terms and conditions, other than the source of payment, as apply to each State department, agency, or institution* in payments to State officers according to the provisions of G.S. 143-166.41.

N.C. Gen. Stat. § 143-166.42 (emphasis added).

The critical task for this Court on this appeal is to determine what the General Assembly intended by the phrase "under the same terms and conditions . . . as apply to each State department, agency, or institution." *Id.* The majority opinion construes "the plain language" of the statute to authorize a broad exercise of discretion because the statute permits a county to make "determinations of eligibility for their local officers." *Id.* Our Supreme Court has, however, construed this same language as only making local governments "responsible for certain aspects of *administering* the separation allowance," *Bowers*, 339 N.C. at 419, 451 S.E.2d at 288 (emphasis added). This administrative role does not, according to our Supreme Court, grant local governments discretion to alter the terms and conditions applicable to

the payment of the allowance. *Id.*, 451 S.E.2d at 289. The majority opinion has thus, contrary to *Bowers* and principles of statutory construction, effectively deleted from the statute the mandatory language that local government is responsible "for making payments to their eligible officers *under the same terms and conditions*, other than the source of payment, *as apply to each State department, agency, or institutions* in payments to State officers according to the provisions of G.S. 143-166.41." N.C. Gen. Stat. § 143-166.42 (emphasis added).

There is no dispute that N.C. Gen. Stat. § 143-166.41(c)'s provisions regarding cessation of payment of the allowance represent "terms and conditions" of payment. The majority opinion effectively assumes that the General Assembly intended that the literal language of that subsection apply to the local governmental officers such that a local officer's special allowance would terminate upon employment by the State—even though the officer had never before worked for the State and was not drawing a State retirement—but would not terminate upon his commencing employment with another local governmental entity who was participating in the Local Government Retirement System that was paying the officer's retirement. I cannot agree: such a construction of the statute does not make practical sense and is not consistent with other provisions relating to the Local Government Retirement System.

"In interpreting a statute, the Court must first ascertain the legislative intent in enacting the legislation." *O&M Indus. v. Smith Eng'g Co.*, 360 N.C. 263, 267, 624 S.E.2d 345, 348 (2006). Initially, we turn to the words chosen by the legislature and "[w]hen the words are clear and unambiguous, they are to be given their plain and ordinary meanings." *Id.* at 268, 624 S.E.2d at 348. When, however, "a statute is ambiguous, judicial construction must be used to ascertain the legislative will." *Burgess v. Your House of Raleigh, Inc.*, 326 N.C. 205, 209, 388 S.E.2d 134, 136-37 (1990). In doing so, an appellate court should "consider the policy objectives prompting passage of the statute and should avoid a construction which defeats or impairs the purpose of the statute." *O&M Indus.*, 360 N.C. at 268, 624 S.E.2d at 348. *See also Burgess*, 326 N.C. at 215, 388 S.E.2d at 140 (" 'A construction which operates to defeat or impair the object of the statute must be avoided if that can reasonably be done without violence to the legislative language.' " (quoting *State v. Hart*, 287 N.C. 76, 80, 213 S.E.2d 291, 295 (1975)). I believe the language of N.C. Gen. Stat. § 143-166.42 is ambiguous and requires judicial construction.

**WIGGS v. EDGECOMBE CTY.**

[179 N.C. App. 47 (2006)]

In *Bowers*, 339 N.C. at 419, 451 S.E.2d at 289, our Supreme Court held that the purpose of N.C. Gen. Stat. §§ 143-166.41 and 143-166.42 "was to encourage early retirement." To construe § 143-166.42 as permitting a local law enforcement officer to retire under the Local Government Retirement System and draw the special separation allowance, but then return to work for another employer participating in that Retirement System is inconsistent with that purpose. To give effect to the legislature's purpose, I believe that § 143-166.42 should be construed as substituting "employer participating in the North Carolina Local Governmental Employees' Retirement System" for "State department, agency, or institution" in N.C. Gen. Stat. § 143-166.41.

This construction is consistent with other provisions relating to the Local Government Retirement System. "It is well established that '[w]hen multiple statutes address a single matter or subject, they must be construed together, in *pari materia*, to determine the legislature's intent.' " *Wright v. Blue Ridge Area Auth.*, 134 N.C. App. 668, 672, 518 S.E.2d 772, 775 (quoting *Taylor v. City of Lenoir*, 129 N.C. App. 174, 178, 497 S.E.2d 715, 719 (1998)), *disc. review denied*, 351 N.C. 122, 541 S.E.2d 472 (1999).

The local officer special allowance provision, N.C. Gen. Stat. § 143-166.42, applies "to all eligible law-enforcement officers as defined by G.S. 128-21(11b) or G.S. 143-166.50(a)(3) who are employed by local government employers." N.C. Gen. Stat. § 128-21(11b) (2005) refers to officers participating in the Local Government Retirement System.[3] N.C. Gen. Stat. § 128-24(5a) (2005) provides that law enforcement officers participating in the Local Government Retirement System after 1 January 1986 are subject to N.C. Gen. Stat. § 128-24(5)(c) and (d). N.C. Gen. Stat. § 128-24(5) (c) and (d) in turn specify:

> c. Should a beneficiary who retired on an early or service retirement allowance be *reemployed, or otherwise engaged to perform services, by an employer participating in the Retirement System* on a part-time, temporary, interim, or on fee-for-service basis, whether contractual or otherwise, and if such beneficiary earns an amount during the 12-month period immediately following the effective date of retirement or in

---

3. N.C. Gen. Stat. § 143-166.50 (2005), also referenced by N.C. Gen. Stat. § 143-166.42, sets out retirement provisions for local governmental law enforcement officers, but specifies that on or after 1 January 1986, those officers shall be members of the Local Government Retirement System.

any calendar year which exceeds fifty percent (50%) of the reported compensation, excluding terminal payments, during the 12 months of service preceding the effective date of retirement, or twenty thousand dollars ($20,000), whichever is greater, as hereinafter indexed, then the retirement allowance *shall be suspended* as of the first day of the month following the month in which the reemployment earnings exceed the amount above, for the balance of the calendar year. . . . .

d.  Should a beneficiary who retired on an early or service retirement allowance *be restored to service as an employee*, then the retirement allowance *shall cease* as of the first day of the month following the month in which the beneficiary is restored to service and the beneficiary shall become a member of the Retirement System and shall contribute thereafter as allowed by law at the uniform contribution payable by all members.

(Emphasis added.) "Service" is defined as service by a person regularly employed by an employer subject to Article 3 of Chapter 128, which sets out the retirement system for counties, cities, and towns. N.C. Gen. Stat. § 128-21(22). N.C. Gen. Stat. § 128-23(g) (2005) further specifies that "any employer . . . who employs law enforcement officers transferred from the Law Enforcement Officers' Retirement System to this Retirement System on January 1, 1986, or who employs law enforcement officers electing to become members of this Retirement System on and after January 1, 1986, shall be employers participating in this Retirement System as this participation pertains to their law enforcement officers."

Therefore, a law enforcement officer participating in the Local Government Retirement System who takes an early or service retirement will have his retirement allowance suspended or ceased when he returns to employment with another employer participating in the Retirement System.[4] Under the principle of construing statutes involving the same subject—here, the retirement of law enforcement officers—*in pari materia*, the plain language of N.C. Gen. Stat. § 128-24 is persuasive evidence that N.C. Gen. Stat. § 143-166.42 should be construed to cause the special separation allowance to cease upon the officer's employment with another employer participating in the Local Government Retirement System.

---

4. N.C. Gen. Stat. § 128-24(5a) permits a local law enforcement officer to draw retirement while working for another local governmental entity only if he both retired and was reemployed prior to 1 January 1986.

I can conceive of no reason that retirement benefits should cease upon re-employment with another employer participating in the Local Government Retirement System, but the special, early retirement allowance should not. Further, it makes no sense that the allowance would terminate upon employment with the State when the State has nothing to do with the funding of that allowance. *See* 1985 N.C. Sess. Laws ch. 1019 (indicating that the special separation allowance was made applicable to local officers because the General Assembly had authorized increases in the sales tax under which local governments would raise over $350,000,000 annually).

In sum, I believe that when the General Assembly provided that the special separation allowance should be paid to local officers "under the same terms and conditions" applicable to State officers, it intended for the allowance to cease upon re-employment with another employer participating in the Local Government Retirement System and not upon employment with a State employer. Accordingly, Edgecombe County's resolution was immaterial—it simply reiterated the law already applicable to Mr. Wiggs on the date he retired. I would, therefore, reverse the trial court's entry of summary judgment in favor of Mr. Wiggs.