DUDLEY A. DAWSON AND JOAN R. DAWSON, PLAINTIFFS v. N.C. DEPARTMENT OF
ENVIRONMENT AND NATURAL RESOURCES, DEFENDANT

No. COA09-109

(Filed 15 June 2010)

**Tort Claims Act— statute of repose inapplicable—actually
constructed improvement required**

The Industrial Commission did not err by concluding that
the six-year statute of repose under N.C.G.S. § 1-50(a)(5) relat-
ing to claims arising out of a defective or unsafe improvement
to real property did not apply to plaintiffs' negligence claim for
damages arising out of misrepresentations that certain real prop-
erty perked and a home could be built on the property. N.C.G.S.
§ 1-50(a)(5) requires that the action relate to an actually con-
structed improvement, and no such improvement existed in this
case. Defendant failed to demonstrate that any other statute
would render the action untimely.

Appeal by defendant from decision and order entered 1 October
2008 by the North Carolina Industrial Commission. Heard in the
Court of Appeals 19 August 2009.

*George B. Daniel, P.A., by George B. Daniel; and Everett
Gaskins Hancock & Stevens, LLP, by Michael J. Tadych and
James M. Hash, for plaintiffs-appellees.*

*Attorney General Roy Cooper, by Assistant Attorney General
D. Joseph Tanoury, for defendant-appellant.*

GEER, Judge.

The North Carolina Department of Environment and Natural
Resources ("DENR") appeals from a decision of the Industrial
Commission awarding plaintiffs Dudley A. Dawson and Joan R.
Dawson damages under the State Tort Claims Act arising out of rep-
resentations that certain real property perked and a home could be
built on the property. After the Dawsons purchased the property and
at the point they sought to build a home, they were denied a permit
to improve the property because, contrary to the representations, the
property was not suitable for a septic system.

DENR's sole argument on appeal is that the Dawsons' claim is
barred by the six-year statute of repose in N.C. Gen. Stat. § 1-50(a)(5)

(2009) relating to claims arising out of a defective or unsafe improvement to real property. Because N.C. Gen. Stat. § 1-50(a)(5) requires that the action relate to an actually-constructed improvement and no such improvement exists in this case, we hold that the Commission did not err in concluding that N.C. Gen. Stat. § 1-50(a)(5) does not apply to the Dawsons' claims. As DENR makes no other argument for reversal of the decision in the Dawsons' favor, we affirm.

<u>Facts</u>

The Full Commission made the following findings of fact that have not been challenged on appeal. They are, therefore, binding. *See Drewry v. N.C. Dep't of Transp.*, 168 N.C. App. 332, 333 n.2, 607 S.E.2d 342, 344 n.2, *disc. review denied*, 359 N.C. 410, 612 S.E.2d 318 (2005).

The Dawsons entered into a contract to purchase Lot 29 and Lot 30 in a subdivision in Person County, North Carolina, contingent on the two lots being perkable. The Dawsons asked the Person County Health Department to determine whether Lot 29 and Lot 30 perked and whether the lots could have a house built on them.

Jimmy Clayton, a sanitarian for the Health Department, had the property tested to determine whether the lots perked and could be improved. On 1 March 1989, Clayton issued a Site Classification letter to the Dawsons stating that Lot 29 and Lot 30 perked. After receiving this notification, the Dawsons purchased Lot 29 and Lot 30 for a total purchase price of $60,000.00 with $30,000.00 paid at closing and the remaining $30,000.00 to be financed over the next five years. The Dawsons ultimately paid the total amount due.

From 1989 through 2000, the Dawsons removed some of the trees and underbrush, graded for a driveway, and placed gravel on the driveway. On 4 April 2000, the Dawsons applied for improvement permits with the Health Department in order to build a two-bedroom home on either Lot 29 or Lot 30. The improvements that the Dawsons sought to make in 2000 were identical to what they had proposed to the Health Department in 1989 prior to the Health Department's notifying them that the lots perked and were buildable. Nonetheless, Mike Cash of the Health Department notified the Dawsons that after testing and analysis of the lots, he had determined that neither Lot 29 nor Lot 30 would support the home the Dawsons intended to build. More specifically, Lot 30 would not support any sewage septic disposal system at all. While Lot 29 would support a sewage septic disposal system, it did not have the repair area necessary in order for the

Dawsons to be able to build the home they desired. The Health Department, therefore, denied the Dawsons' request for improvement permits in a notice dated 21 June 2000.

The Dawsons appealed the denial decision. Fred Smith, Regional Soil Scientist with DENR, went to the property and conducted testing. He ultimately determined that neither lot was suitable for installation of an appropriate sewage septic disposal system. After Smith informed Cash of his determination, Cash advised the Dawsons in a letter dated 30 August 2000, but postmarked 5 September 2000, that their improvement permit applications were again denied.

The Dawsons then retained experts to assist them. The experts advised them that if they found a nearby lot that would pass the perk test, that lot could be used as a repair area. The Dawsons ultimately purchased Lot 25 in the same subdivision for $25,000.00 plus $515.00 in closing costs. Following the Dawsons' purchase of Lot 25, the Health Department issued an improvement permit to the Dawsons to build a residence on Lot 30 with an active sewage septic disposal system installed on Lot 29 together with the repair area on Lot 25.

On 23 June 2003, the Dawsons filed a negligence claim against DENR under the State Tort Claims Act. The Dawsons alleged they purchased Lot 29 and applied for an improvement permit in reliance on Clayton's letter evaluating the lot as "provisionally suitable" for a septic system, only to have the lot later declared unsuitable and their improvement permit denied. The Dawsons requested damages for the lot purchase price, closing costs, accrued interest, property taxes, grading and clearing expenses, soil scientist fees, and lost lot appreciation, in the total amount of $127,190.48.

On 11 July 2003, DENR moved to dismiss the claim pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6) of the Rules of Civil Procedure. On 20 October 2005, DENR also moved for summary judgment, contending that it was entitled to summary judgment based on the statute of repose set out in N.C. Gen. Stat. § 1-50(a)(5).

On 16 November 2005, Deputy Commissioner Wanda Blanche Taylor entered an order granting summary judgment to DENR. The Deputy Commissioner concluded that "[a]s plaintiffs did not meet the substantive element of filing their tort claims within the time deadline imposed by the statute of repose, there is no genuine issue as to material fact and defendant is entitled to judgment as a matter of law." The Dawsons gave notice of appeal to the Full Commission on 22 November 2005.

On 16 February 2007, the Full Commission entered an order vacating the Deputy Commissioner's grant of summary judgment to DENR and concluding that N.C. Gen. Stat. § 1-50(a)(5) did not bar the Dawsons' claims. The Full Commission remanded the matter to the Deputy Commissioner for a full evidentiary hearing. On 8 January 2008, after an evidentiary hearing, Deputy Commissioner George T. Glenn, II found DENR negligent and ordered DENR to pay the Dawsons damages for the purchase price, closing costs, lost earnings, appraisal fees, expert fees, and ad valorem taxes for Lot 25. DENR appealed to the Full Commission on 11 January 2008.

On 1 October 2008, the Full Commission entered a decision and order adopting Deputy Commissioner Glenn's decision and order with modifications. The Commission concluded that DENR was negligent and awarded damages to the Dawsons for the purchase price of Lot 25 ($25,000.00), closing costs for Lot 25 ($515.00), lost earnings of Mr. Dawson ($6,750.00) due to time spent addressing the issues, appraisal fees ($375.00), expert fees ($900.00), and ad valorem taxes for Lot 25. DENR timely appealed to this Court.

### Discussion

DENR's sole contention on appeal is that the Full Commission erred in holding that the Dawsons' tort claim was not barred by the statute of repose set out in N.C. Gen. Stat. § 1-50(a)(5). "The standard of review for an appeal from the Full Commission's decision under the Tort Claims Act 'shall be for errors of law only under the same terms and conditions as govern appeals in ordinary civil actions, and the findings of fact of the Commission shall be conclusive if there is any competent evidence to support them.' " *Simmons v. Columbus County Bd. of Educ.*, 171 N.C. App. 725, 727, 615 S.E.2d 69, 72 (2005) (quoting N.C. Gen. Stat. § 143-293 (2003)). "Thus, 'when considering an appeal from the Commission, our Court is limited to two questions: (1) whether competent evidence exists to support the Commission's findings of fact, and (2) whether the Commission's findings of fact justify its conclusions of law and decision.' " *Id.* at 728, 615 S.E.2d at 72 (quoting *Simmons v. N.C. Dep't of Transp.*, 128 N.C. App. 402, 405-06, 496 S.E.2d 790, 793 (1998)).

"A statute of repose . . . is a time limitation which begins to run at a time unrelated to the traditional accrual of a cause of action." *Tipton & Young Constr. Co. v. Blue Ridge Structure Co.*, 116 N.C. App. 115, 117, 446 S.E.2d 603, 604 (1994), *aff'd per curiam*, 340 N.C. 257, 456 S.E.2d 308 (1995). " 'Unlike an ordinary statute of limitations

DAWSON v. N.C. DEP'T OF ENV'T & NATURAL RES.

[204 N.C. App. 524 (2010)]

which begins running upon accrual of the claim, the period contained in the statute of repose begins when a specific event occurs, regardless of whether a cause of action has accrued or whether any injury has resulted.' " *Id.* (quoting *Black v. Littlejohn*, 312 N.C. 626, 633, 325 S.E.2d 469, 474-75 (1985)). "A statute of repose is a substantive limitation, and is a condition precedent to a party's right to maintain a lawsuit." *Id.*, 446 S.E.2d at 605.

The statute of repose in N.C. Gen. Stat. § 1-50(a)(5)(a) provides:

No action to recover damages based upon or arising out of the defective or unsafe condition of an improvement to real property shall be brought more than six years from the later of the specific last act or omission of the defendant giving rise to the cause of action or substantial completion of the improvement.

N.C. Gen. Stat. § 1-50(a)(5)(b) in turn defines "an action based upon or arising out of the defective or unsafe condition of an improvement to real property" as including:

1. Actions to recover damages for breach of a contract *to construct or repair an improvement* to real property;

2. Actions to recover damages for the *negligent construction or repair of an improvement* to real property;

3. Actions to recover damages for personal injury, death or damage to property;

4. Actions to recover damages for economic or monetary loss;

5. Actions in contract or in tort or otherwise;

6. Actions for contribution [sic] indemnification for damages sustained on account of an action described in this subdivision;

7. Actions against a surety or guarantor of a defendant described in this subdivision;

8. Actions brought against any current or prior owner of the real property or improvement, or against any other person having a current or prior interest therein;

9. Actions against any person furnishing materials, or against any person who develops real property or who performs or furnishes the design, plans, specifications, surveying, supervision, testing or observation of construction, or construction of

> *an improvement to real property, or a repair to an improvement to real property.*

(Emphasis added.)

As our Supreme Court has emphasized, when construing a statute, "our primary task is to ensure that the purpose of the legislature, the legislative intent, is accomplished." *Elec. Supply Co. of Durham, Inc. v. Swain Elec. Co.*, 328 N.C. 651, 656, 403 S.E.2d 291, 294 (1991). In performing this function, "[l]egislative purpose is first ascertained from the plain words of the statute." *Id. See also O & M Indus. v. Smith Eng'g Co.*, 360 N.C. 263, 267-68, 624 S.E.2d 345, 348 (2006) ("The first consideration in determining legislative intent is the words chosen by the legislature."). When the words are unambiguous, "they are to be given their plain and ordinary meanings." *Id.* at 268, 624 S.E.2d at 348.

Here, the plain language of the statute indicates that the statute does[*s*] not apply unless the action "aris[es] out of the defective or unsafe condition of an improvement to real property." N.C. Gen. Stat. § 1-50(a)(5)(a). Indeed, our Supreme Court has held:

> In order for this statute to apply, three circumstances must exist: (1) the action must be for recovery of damages to real or personal property, (2) *the damages must arise out of the defective and unsafe condition of an improvement to real property*, and (3) the party sued must have been involved in the designing, planning, or construction *of the defective or unsafe improvement.*

*Feibus & Co. v. Godley Constr. Co.*, 301 N.C. 294, 302, 271 S.E.2d 385, 391 (1980) (emphasis added).

Similarly, in *Trustees of Rowan Tech. Coll. v. J. Hyatt Hammond Assocs.*, 313 N.C. 230, 239, 328 S.E.2d 274, 280 (1985) (emphasis added), the Court held that N.C. Gen. Stat. § 1-50(a)(5) "deals with actions for damages for breach of contract, negligence, and recovery of economic or monetary loss in general *arising from faulty repair or improvement* to real property against, among others, persons who furnish the design for or supervise the construction of *such repair or improvement* . . . ." Phrased differently, the statute "deals expressly with claims arising out of *defects in improvement to realty* caused by the performance of specialized services of designers and builders." *Id.*, 328 S.E.2d at 279-80 (emphasis added).[1]

---

1. Although *Trustees of Rowan Technical College* construed a previous version of N.C. Gen. Stat. § 1-50(a)(5), the opinion's analysis applies equally to the current version.

In sum, a prerequisite for application of N.C. Gen. Stat. § 1-50(a)(5) is that there must have been an improvement to real property and that improvement must be either defective or unsafe. DENR has cited no case holding or even suggesting that this statute applies even in the absence of the actual construction or repair of an improvement. Nor have we found any such decision.

Here, DENR contends that the case arises out of a negligent design of a septic system by Clayton and a negligent inspection by Clayton. Even assuming, without deciding, that Clayton could be found to have furnished a design of a septic system, that design did not result in the construction of a defective or unsafe improvement as required for application of N.C. Gen. Stat. § 1-50(a)(5)(b)(9). As for the inspection, Clayton did not inspect any improvement on the property; he inspected the real property. Given the plain language of the statute and our Supreme Court's decisions in *Feibus & Co.* and *Trustees of Rowan Technical College*, N.C. Gen. Stat. § 1-50(a)(5) does not apply to this proceeding.

DENR, however, cites *Trustees of Rowan Technical College* as holding that "[t]he statute covers claims for negligent failure to properly design and construct buildings." That case, however, involved an action for architectural and engineering malpractice arising out of structural defects in a completed building. 313 N.C. at 232, 328 S.E.2d at 276. Thus, there was a defective and unsafe improvement to the real property. Ultimately, the Court held that N.C. Gen. Stat. § 1-50(a)(5) applied "where plaintiff seeks damages resulting from the architect's faulty design or supervision, whether those damages are sought merely to correct the defect or as a result of some further injury caused by the defect." 313 N.C. at 242-43, 328 S.E.2d at 282. In other words, a plaintiff could recover damages for the defective improvement or for injury resulting from the defective improvement. Nothing in the case suggests that the statute applies when there has been no actual improvement constructed, as is the case here.

The Dawsons' lawsuit does not allege that in reliance on Clayton's design of a septic system, they built a septic system that ultimately turned out to be defective. Rather, Clayton was required to sketch the septic system as part of his responsibility for determining the suitability of the Dawsons' land for a septic system. The Dawsons relied upon Clayton's representations regarding the suitability of the real property for a particular purpose and not on any design of an improvement that was actually constructed. *Trustees of Rowan*

*Technical College* contains no language or reasoning that suggests N.C. Gen. Stat. § 1-50(a)(5) applies in that situation.

DENR argues further that this Court, in *Gillespie v. Coffey,* 86 N.C. App. 97, 356 S.E.2d 376 (1987), applied N.C. Gen. Stat. § 1-50(a)(5) "in a case substantially similar to the instant one." In *Gillespie,* however, the plaintiff brought a negligence claim against the City of Lenoir, contending it was liable for injuries suffered due to the plaintiff's fall in the remodeled entryway of a restaurant that did not meet building code requirements. The plaintiff claimed that the City had negligently inspected and approved the remodeling. *Id.* at 98, 356 S.E.2d at 377. On appeal, this Court held that the plaintiff's claim, brought more than six years after the building inspector approved the remodeling, was barred by the statute of repose in N.C. Gen. Stat. § 1-50(a)(5). 86 N.C. App. at 99, 356 S.E.2d at 377. Thus, as in all other cases applying N.C. Gen. Stat. § 1-50(a)(5), the lawsuit arose out of a defective or unsafe improvement actually built on the real property.

DENR, however, contends that this case is similar to *Gillespie* "because both cases involved government inspectors whose duties were to evaluate property for compliance with State laws and public health codes to determine whether applicants would receive permits authorizing the improvement to realty." The basis of the holding in *Gillespie* was not that it involved a negligent inspection of real property—the claim in this case—but that the City employee negligently inspected an improvement to the real property: the remodeled entryway.

In this case, Clayton was not inspecting an existing septic system to see if it was up to code. He was inspecting the lot to determine if it was suitable land on which to construct an improvement. Because DENR has failed to show the existence of an improvement to real property, we hold that N.C. Gen. Stat. § 1-50(a)(5) does not apply to the Dawsons' action.

While DENR argues in a footnote that the Commission erred in concluding that N.C. Gen. Stat. § 1-52(16) (2009) applies to this case, we need not address that issue because DENR has made no argument that it was entitled to prevail on the merits on any basis other than N.C. Gen. Stat. § 1-50(a)(5). Even if we were to decide that N.C. Gen. Stat. § 1-52(16) does not apply, as DENR urges, DENR has not demonstrated that any other statute would render the action untimely.

The Dawsons, on the other hand, ask this Court to conclude that claims brought under the State Tort Claims Act are not subject to any statute of repose. Because we have rejected DENR's contention that N.C. Gen. Stat. § 1-50(a)(5) applies to the allegations of this case and DENR has not suggested that any other statute of repose is applicable, it is unnecessary to resolve that question. As we have rejected the only argument made by DENR on appeal that would support a decision in DENR's favor—that N.C. Gen. Stat. § 1-50(a)(5) applies to bar the Dawsons' claims—we affirm the Commission's decision awarding damages to the Dawsons.

Affirmed.

Judges ROBERT C. HUNTER and STEELMAN concur.

