IN THE SUPREME COURT OF NORTH CAROLINA

No. 44PA17

Filed 2 March 2018

EDWARD F. WILKIE and DEBRA T. WILKIE

v.

CITY OF BOILING SPRING LAKES

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, ___ N.C. App. ___, 796 S.E.2d 57 (2016), reversing an order entered on 5 November 2015 by Judge Ebern T. Watson, III, in Superior Court, Brunswick County, and remanding the matter for further proceedings. Heard in the Supreme Court on 8 November 2017.

*Smith Moore Leatherwood, LLP, by Kip David Nelson and Matthew A. Nichols; and Law Office of Kurt B. Fryar, by Kurt B. Fryar, for plaintiff-appellants.*

*Cauley Pridgen, P.A., by James P. Cauley, III, and David M. Rief; and Jack Cozort for defendant-appellee.*

ERVIN, Justice.

The issue in this case is whether plaintiffs Edward F. and Debra T. Wilkie are entitled to seek compensation pursuant to N.C.G.S. § 40A-51 based upon the extended flooding of their property as the result of actions taken by defendant City of Boiling Spring Lakes for an allegedly private purpose. For the reasons set forth below, we reverse the Court of Appeals' decision and remand this case to the Court of

Appeals for consideration of defendant's remaining challenges to the trial court's order.

Plaintiffs own a house and lot bordering Spring Lake, a thirty-one acre body of water owned by defendant that is fed by natural springs that empty into the lake and by surface water runoff from the surrounding area. Two fixed pipes drain excess water from Spring Lake.

On 25 June 2013, defendant's Board of Commissioners received a petition signed by plaintiffs[1] and other persons owning property adjacent to Spring Lake requesting that defendant modify the height of the drain pipes. According to a number of persons who owned property adjoining Spring Lake, the installation of replacement pipes a number of years earlier had lowered the lake level. On 2 July 2013, after several meetings during which concerns about the lake level continued to be expressed, the Board voted "to return Spring Lake to its original shore line as quickly as can be done."

On or about 11 July 2013, "elbows" were placed onto the inlet side of the two outlet pipes for the purpose of raising the pipes by eight or nine inches and elevating the lake level. After the pipes were raised, plaintiffs claimed that portions of their property were covered by the lake. Plaintiffs and a number of other lakeside property

---

[1] The only member of the family who actually signed the petition was Ms. Wilkie, who affixed her name and that of Mr. Wilkie to the document.

owners signed a second petition seeking removal of the "elbows" from the outlet pipes that was presented to the Board on 6 August 2013.

After receiving the second petition, the Board voted to lower the lake level by three inches. A number of additional Board meetings were held between 6 August 2013 and 13 January 2014, during which several residents complained that water from the lake continued to encroach upon their property. However, a majority of the Board refrained from voting to remove the elbows during these meetings. On 13 January 2014, the Board voted to hire Sungate Design Group, an engineering firm, to determine the appropriate lake level. In light of Sungate's recommendation that the lake be returned to its original level, the elbows were removed on 30 July 2014.

On 23 May 2014, plaintiffs filed a complaint in which they sought, among other things, compensation pursuant to N.C.G.S. § 40A-51. In support of their request for relief, plaintiffs asserted that they had "lost approximately fifteen to eighteen percent" of their lakeside property "due to the installation of the 'elbow' and subsequent rise of Spring Lake's water level," that the Board "voted to install an elbow on a drainage pipe within Spring Lake for the purpose of raising Spring Lake's water level" "to further a public use and public purpose," and that "[t]he City did not file a complaint containing a declaration of this taking." As a result, plaintiffs sought compensation for the taking of their property pursuant to N.C.G.S. §§ 40A-8 and 40A-

51, the Fifth and Fourteenth Amendments to the United States Constitution, and Article I, Section 19 of the North Carolina Constitution.[2]

After conducting a hearing pursuant to N.C.G.S. § 40A-47 for the purpose of resolving all disputed issues between the parties other than the amount of damages, if any, to which plaintiffs were entitled, the trial court entered an order on 5 November 2015 determining that the installation of the elbows "for the benefit of, and at the sole request of, residents around the lake" elevated the lake level and "encroached upon and submerged" plaintiffs' property and resulted in a "taking of [plaintiffs'] property without just compensation being paid." Although defendant "maintain[ed] Spring Lake at elevated levels" "for a private use," the trial court determined that plaintiffs had "proven their N.C.G.S. §[ ]40A-51 cause of action" because defendant took a temporary easement in a portion of plaintiffs' property without filing a complaint containing a declaration of taking.[3] As a result, the trial court ordered that further proceedings be held for the purpose of determining the

---

[2] According to surveys obtained by plaintiffs on 14 May 2014, while the elbows were still in place, and 18 March 2015, after the elbows had been removed, "the Lake encroached upon and submerged 1,192 square feet of [plaintiffs'] property" "during the time the elbows were installed." An appraisal commissioned by plaintiffs estimated that the value of the topsoil and centipede grass lost due to the flooding of plaintiffs' property amounted to $1,000. The validity of these damage estimates appears to be a disputed issue of fact.

[3] The trial court also determined that the installation of the elbows proximately caused the encroachment of the lake water upon plaintiffs' land, that this encroachment was foreseeable, and that defendant had taken "a temporary easement interest in 1,120 square feet of [plaintiffs'] property for a period of 1 year and 20 days" along with "a portion of the topsoil and centipede grass that was located on the same."

amount of compensation to which plaintiffs were entitled in light of the temporary taking of a portion of their property.

In seeking relief from the trial court's order before the Court of Appeals, defendant argued that plaintiffs' claims should be dismissed because a claim for inverse condemnation does not lie unless plaintiffs' property is taken for a public use or public purpose. According to defendant, the trial court's determination that defendant decided to raise the lake level for the benefit of private landowners "should have ended the case." In defendant's view, the remedy provided by N.C.G.S. § 40A-51(a) is only available when "property has been taken by an act or omission of a condemnor listed in G.S. 40A-3(b) or (c)" "[f]or the public use or benefit." In addition, defendant argued that the trial court had erred by concluding that a taking had occurred given that (1) the encroachment upon and damage to plaintiffs' property was not foreseeable; (2) the trial court misapplied the principles enunciated in the decision of the United States Supreme Court in *Arkansas Game & Fish Commission v. United States,* 568 U.S. 23, 133 S. Ct. 511, 184 L. Ed. 2d 417 (2012); (3) plaintiffs were estopped from complaining about the effects of a decision that they had requested defendant to make; and (4) the trial court failed to make findings of fact concerning the boundaries of plaintiffs' property and of the property that defendant had allegedly taken.

Plaintiffs, on the other hand, contended that "neither a 'public use' nor a 'public purpose' is an element of an inverse condemnation action." According to plaintiffs,

this Court held in *Kirby v. North Carolina Department of Transportation,* 368 N.C. 847, 856, 786 S.E.2d 919, 926 (2016), that a plaintiff need only show "a substantial interference with certain property rights . . . [that] caused a decrease in the fair market value of [plaintiff's] land" and defined a "taking" in *Long v. City of Charlotte,* 306 N.C. 187, 199, 293 S.E.2d 101, 109 (1982) (quoting *Penn v. Carolina Virginia Coastal Corp.,* 231 N.C. 481, 57 S.E.2d 817 (1950)), as "appropriating or injuriously affecting [private property] in such a way as substantially to oust the owner and deprive him of all beneficial enjoyment thereof." After noting that N.C.G.S. § 40A-51 makes no use of the term "public use," plaintiffs argue that the phrase "of a condemnor listed in [N.C.]G.S. [§] 40A-3(b) or (c)" modifies "act or omission" rather than specifying the motivation underlying the taking upon which a particular claim advanced in reliance upon N.C.G.S. § 40A-51 relied.

In reversing the trial court's order, the Court of Appeals began by noting that "[o]rders from a condemnation hearing concerning title and area taken are vital preliminary issues that must be immediately appealed pursuant to N.C.[G.S.] § 1-277, which permits interlocutory appeals of determinations affecting substantial rights." *Wilkie v. City of Boiling Spring Lakes,* ___ N.C. App. ___, ___, 796 S.E.2d 57, 61 (2016) (quoting *Town of Apex v. Whitehurst,* 213 N.C. App. 579, 582-83, 712 S.E.2d 898, 901 (2011)). According to the Court of Appeals, "there can be no inverse condemnation when property is not taken for a public use," *id.* at ___, 796 S.E.2d at 62, given that the power of eminent domain is exercised when "the government takes

property *for public use,"* *id.* at ___, 796 S.E.2d at 63 (quoting *Kirby,* 368 N.C. at 854, 786 S.E.2d at 924 (italics added) (emphasis omitted)). The Court of Appeals pointed out that "[t]he plain language of section 40A-51 defines when the remedy of an inverse condemnation action is available against a public condemnor" and "limits the availability of this remedy to instances in which property is taken by a condemnor pursuant to one of the enumerated acts or omissions in section 40A-3(b)." *Id.* at ___, 796 S.E.2d at 63. Since "the plain language of section 40A-51 limits its application to action taken by a municipality 'for the public use or benefit,'" the Court of Appeals held that "there is no remedy of inverse condemnation under the statute when property is not taken 'for the public use or benefit.'" *Id.* at ___, 796 S.E.2d at 63. As a result, the Court of Appeals reversed the trial court's order without addressing defendant's remaining contentions and held that, since plaintiffs had sought relief pursuant to both N.C.G.S. § 40A-51 and Article I, Section 19 of the North Carolina Constitution and since "an aggrieved person has a direct claim under the North Carolina Constitution for violation of his or her constitutional rights when no adequate state law remedy exists," this case should be remanded to the trial court for the purpose of allowing it to address plaintiffs' state constitutional claims. *Id.* at ___, 796 S.E.2d at 63-64 (first citing *Corum v. Univ. of N.C.,* 330 N.C. 761, 782, 413 S.E.2d 276, 289, *cert. denied,* 506 U.S. 985, 113 S. Ct. 493, 121 L. Ed. 2d 431 (1992); then citing, *inter alia, Midgett v. N.C. State Highway Comm'n,* 260 N.C. 241, 250, 132 S.E.2d 599, 608 (1963), *overruled in part on other grounds by Lea Co. v. N.C. Bd. of*

*Transp.*, 308 N.C. 603, 616, 304 S.E.2d 164, 174 (1983)). On 3 May 2017, this Court entered a special order granting plaintiffs' request for discretionary review of the issues of "[w]hether the Court of Appeals erred by holding that taking for a public use or benefit is an element of a cause of action set forth in [N.C.G.S.] §[ ]40A-51" and "[w]hether the Court of Appeals erroneously interpreted [N.C.G.S.] §[ ]40A-51," while denying plaintiffs' request for discretionary review of certain additional issues.

In seeking relief from the Court of Appeals' decision before this Court, plaintiffs argue that N.C.G.S. § 40A-51 is "clear and unambiguous" and only requires a showing "(1) that property has been taken, (2) by an act or omission, (3) of a condemnor listed in N.C.[G.S.] § 40A-3(b) or (c), and (4) that no condemnation complaint containing a declaration has been filed," with the Court of Appeals having erred by "adding a 'public use or benefit' requirement" to the elements of a statutory inverse condemnation claim. According to plaintiffs, the phrase " 'listed in [N.C.]G.S. [§] 40A-3(b) or (c)' should be applied to the immediately preceding word 'condemnor' as opposed to the earlier phrase 'act or omission,' " so as to limit "the type of *entity* that can be sued for inverse condemnation" rather than "the type of *action or omission* for which a property owner can recover following a taking." In advancing this argument, plaintiffs point to the doctrine of the last antecedent, pursuant to which "relative and qualifying words, phrases, and clauses ordinarily are to be applied to the word or phrase immediately preceding." *HCA Crossroads Residential Ctrs., Inc. v. N.C. Dep't of Human Res.*, 327 N.C. 573, 578, 398 S.E.2d 466, 469 (1990). In addition, plaintiffs

contend that N.C.G.S. § 40A-51 is a remedial statute that should be interpreted broadly, citing *O & M Industries v. Smith Engineering Co.,* 360 N.C. 263, 268, 624 S.E. 2d 345, 348 (2006) (stating that "[a] remedial statute must be construed broadly 'in the light of the evils sought to be eliminated, the remedies intended to be applied, and the objective to be attained'" (quoting *Puckett v. Sellars,* 235 N.C. 264, 267, 69 S.E.2d 497, 499 (1952))). Plaintiffs assert that a construction of N.C.G.S. § 40A-51 allowing compensation even if the property in question could not have been acquired by eminent domain finds additional support in the statutory references to an "act or omission," rather than to "condemnation" or "eminent domain," on the theory that the General Assembly's linguistic choices tend to broaden the circumstances under which statutory inverse condemnation claims can properly be advanced. A similar inference can be drawn by reading the statutory requirement that condemnors instituting eminent domain proceedings plead "the public use for which the property is taken," N.C.G.S. § 40A-41 (2017), and file a memorandum of action containing "[a] statement of the property taken for public use," *id.* § 40A-43 (2017), in conjunction with the absence of any requirement that statutory inverse condemnation claimants do more than provide "[a] statement of the property allegedly taken," N.C.G.S. § 40A-51(b)(3) (2017). According to plaintiffs, "[t]he General Assembly simply did not intend for 'public use or benefit' to be an element of a cause of action under section 40A-51, when property has already been taken."

Defendant, on the other hand, contends that an examination of both the language in which N.C.G.S. § 40A-51 is couched and the statute's legislative history demonstrates that an inverse condemnation claimant must allege and show that the property in question was taken by one of "the enumerated acts or omissions" listed in N.C.G.S. § 40A-3(b) and (c). According to defendant, the statutory reference to an "act or omission" would be superfluous in the absence of such an interpretation, given that "everything a condemnor does is either an act or omission." Defendant asserts that the doctrine of the last antecedent provides no assistance in interpreting N.C.G.S. § 40A-51, since "listed in N.C.G.S. § 40A-3(b) or (c)" could modify either the entire phrase "enumerated acts or omissions of condemnors" or nothing more than "condemnors." Defendant claims that the language granting "the authority to exercise the power of eminent domain" in N.C.G.S. § 40A-1 applies to and limits the availability of the statutory inverse condemnation remedy set out in N.C.G.S. § 40A-51 on the grounds that "inverse condemnation is the process of forcing a government to exercise its power of eminent domain," citing *Hoyle v. City of Charlotte,* 276 N.C. 292, 302, 172 S.E.2d 1, 8 (1970).

According to defendant, even if the phrase "listed in [G.S.] 40A-3(b) or (c)" refers to "condemnors," rather than "acts or omissions," N.C.G.S. § 40A-51 requires that the claimant show that his or her injury resulted from a "taking," which is a "term of art" that refers to "takings under the power of eminent domain." In defendant's view, "the application of inverse condemnation [is limited] to those

situations '[w]here private property is *taken* for a public purpose by a governmental agency having the power of eminent domain,' " (quoting *State Highway Commission v. L.A. Reynolds Co.,* 272 N.C. 618, 623, 159 S.E.2d 198, 202 (1968)), with the only public purposes for which local public condemnors are entitled to assert the power of eminent domain being those enumerated in N.C.G.S. § 40A-3(b) and (c). As a result of the fact that defendant's actions were not intended to further one of the statutorily enumerated public purposes, defendant "lacked the power of condemnation and thus did not take the Wilkies' property." Defendant claims that plaintiffs had an adequate remedy other than inverse condemnation in light of N.C.G.S. § 40A-51(c), which provides that "[n]othing in this section shall in any manner affect an owner's common-law right to bring an action in tort for damage to his property," with a property owner having the right to seek common law relief against a defendant that acts for purposes "beyond the power of eminent domain."

The essential issue before us in this case[4] is whether a property owner seeking to assert a statutory inverse condemnation claim pursuant to N.C.G.S. § 40A-51 must show that the condemnor acted to further a public purpose. In order to resolve this

_____

[4] Plaintiffs also argue that defendant failed to note a timely appeal from the trial court's order and that the raising of the lake level constituted a taking for a public purpose. After carefully reviewing the record, we conclude that the trial court did not err by denying plaintiffs' motion to dismiss defendant's appeal and that the Court of Appeals did not err by addressing defendant's challenges to the trial court's order on the merits. In addition, we decline to address plaintiffs' "public use or benefit" argument both because we denied plaintiffs' request for discretionary review of that issue and because we need not do so given our decision with respect to the statutory construction issue that we did elect to review.

issue, we are required to construe the relevant statutory language. After carefully considering the relevant statutory language and precedent, we conclude that the references to N.C.G.S. § 40A-3(b) and (c) contained in N.C.G.S. § 40A-51 serve to simply delineate the universe of entities against whom a statutory inverse condemnation action can be brought pursuant to N.C.G.S. § 40A-51 rather than limiting the acts or omissions that must be shown in order to permit the maintenance of the statutory inverse condemnation action authorized by N.C.G.S. § 40A-51.

"Questions of statutory interpretation are ultimately questions of law for the courts and are reviewed de novo." *In re Ernst & Young, LLP,* 363 N.C. 612, 616, 684 S.E.2d 151, 154 (2009) (citing *Brown v. Flowe,* 349 N.C. 520, 523, 507 S.E.2d 894, 896 (1998)). "The principal goal of statutory construction is to accomplish the legislative intent." *Lenox, Inc. v. Tolson,* 353 N.C. 659, 664, 548 S.E.2d 513, 517 (2001) (citing *Polaroid Corp. v. Offerman,* 349 N.C. 290, 297, 507 S.E.2d 284, 290 (1998), *cert. denied,* 526 U.S. 1098, 119 S. Ct. 1576, 143 L. Ed. 2d 671 (1999)). "The best indicia of that intent are the language of the statute . . . , the spirit of the act and what the act seeks to accomplish." *Coastal Ready-Mix Concrete Co. v. Bd. of Comm'rs,* 299 N.C. 620, 629, 265 S.E.2d 379, 385 (1980) (citations omitted). The process of construing a statutory provision must begin with an examination of the relevant statutory language. *Correll v. Div. of Soc. Servs.,* 332 N.C. 141, 144, 418 S.E.2d 232, 235 (1992); *see also State v. Ward*, 364 N.C. 157, 160, 694 S.E.2d 729, 731 (2010) (stating that, "[w]hen construing legislative provisions, this Court looks first to the plain meaning

of the words of the statute itself"). "It is well settled that '[w]here the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must construe the statute using its plain meaning.'" *In re Estate of Lunsford,* 359 N.C. 382, 391-92, 610 S.E.2d 366, 372 (2005) (alteration in original) (quoting *Burgess v. Your House of Raleigh, Inc.,* 326 N.C. 205, 209, 388 S.E.2d 134, 136 (1990)). In other words, "[i]f the statutory language is clear and unambiguous, the court eschews statutory construction in favor of giving the words their plain and definite meaning." *State v. Beck,* 359 N.C. 611, 614, 614 S.E.2d 274, 277 (2005) (citation omitted).

N.C.G.S. § 40A-51(a) provides, in pertinent part, that

> [i]f property has been taken by an act or omission of a condemnor listed in [N.C.]G.S. [§] 40A-3(b) or (c) and no complaint containing a declaration of taking has been filed the owner of the property [ ] may initiate an action to seek compensation for the taking.

N.C.G.S. § 40A-51(a) (2017).  N.C.G.S. § 40A-3(b)[5] and (c),[6] to which reference is made in N.C.G.S. § 40A-51(a), contain a list of entities that have "the power of eminent domain" "[f]or the public use or benefit."  In other words, N.C.G.S. § 40A-3(b) and (c) specify the public entities that are entitled to exercise the power of eminent domain and the purposes for which the entities in question are entitled to exercise that authority.  When read in context and in accordance with ordinary English usage, the reference to N.C.G.S. § 40A-3(b) and (c) contained in N.C.G.S. § 40A-51(a) makes most sense as a simple delineation of the range of entities against whom a statutory inverse condemnation action can be brought rather than as a description of the motivations

[5] N.C.G.S. § 40A-3(b) (2017) allows "the governing body of each municipality or county" to "possess" "the power of eminent domain" for the purposes of:  "[o]pening, widening, extending, or improving roads, streets, alleys, and sidewalks"; "[e]stablishing, extending, enlarging, or improving" various public enterprises; [e]stablishing, extending, enlarging or improving parks, playgrounds, and other recreational facilities"; "[e]stablishing, extending, enlarging or improving storm sewer and drainage systems and works, or sewer and septic tank lines and systems"; [e]stablishing, enlarging, or improving hospital facilities, cemeteries, or library facilities"; "[c]onstructing, enlarging, or improving city halls, fire stations, office buildings, courthouse jails and other buildings for use by any department, board, commission or agency"; "[e]stablishing drainage programs"; "[a]cquiring designated historic properties"; and "[o]pening, widening, extending, or improving public wharves." N.C.G.S. § 40A-3(b) also extends the "power of eminent domain" to "[t]he board of education of any municipality or county" "for purposes authorized by Chapter 115C of the General Statutes."

[6] N.C.G.S. § 40A-3(c) (2017) authorizes "[a] sanitary district board," "[t]he board of commissioners of a mosquito control district," "[a] hospital authority," "[a] watershed improvement district," "[a] housing authority," "[a] corporation as defined in [N.C.]G.S. [§] 157.50," "a commission established under the provisions of Article 22 of Chapter 160A," "[a]n authority created under the provisions of Article 1 of Chapter 162A," "[a] district established under the provisions of Article 4 of Chapter 162A," "[t]he board of trustees of a community college," "[a] district established under the provisions of Article 6 of Chapter 162A," and "[a] regional public transportation authority" to exercise "the power of eminent domain" "[f]or the public use or benefit."

underlying the "act[s] or omission[s]" necessary for the existence of a statutory inverse condemnation claim. As a result, we hold that the plain meaning of the reference to N.C.G.S. § 40A-3(b) and (c) contained in N.C.G.S. § 40A-51(a) is to specify the entities against whom a statutory inverse condemnation claim can be asserted and nothing more.

A number of additional considerations support this "plain meaning" construction of the relevant statutory language. As plaintiffs note, "relative and qualifying words, phrases, and clauses ordinarily are to be applied to the word or phrase immediately preceding" rather than "extending to or including others more remote," "unless the context indicates a contrary intent." *HCA Crossroads*, 327 N.C. at 578, 398 S.E.2d at 469 (citations omitted); *see also Lockhart v. United States,* ___ U.S. ___, ___, 136 S. Ct. 958, 962, 194 L. Ed. 2d 48, 53 (2016) (stating that "a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows" (ellipsis in original) (quoting *Barnhart v. Thomas,* 540 U.S. 20, 26, 124 S. Ct. 376, 380, 157 L. Ed. 2d 333, 340 (2003))). In view of the fact that the expression "listed in G.S. 40A-3(b) or (c)" as it appears in N.C.G.S. § 40A-51(a) is immediately preceded by "of a condemnor" and in view of the fact that the context does not clearly suggest that this reference to "listed in G.S. 40A-3(b) or (c)" is intended to apply to anything other than the immediately preceding expression, the doctrine of the last antecedent, as previously recognized by this Court, supports our "plain meaning" determination that "listed in G.S. 40A-3(b) or (c)" refers to the

defendants against whom a statutory inverse condemnation claim may be asserted rather than to both the identity of the person against whom the claim is asserted and the purpose for which that entity acted at the time that it injured the claimant's property.

In addition, it seems to us that a decision to provide a claimant whose property has been taken for a public purpose with a statutory inverse condemnation remedy while depriving a claimant who has suffered the same injury for a non-public purpose of the right to utilize that statutory remedy seems inconsistent with the likely legislative intent. "[W]hen the Act is considered as a whole in the light of the evils sought to be eliminated, the remedies intended to be applied, and the objective to be attained," a decision to construe N.C.G.S. § 40A-51 so as to limit plaintiffs' statutory inverse condemnation remedy to instances in which the condemnor acted for a public purpose would "attribute to [the General Assembly] a purpose and intent so fraught with injustice as to shock the consciences of fair-minded men" while a contrary construction "is consonant with the general purpose and intent of the Act . . .[,] is in harmony with the other provisions of the statute, and serves to effectuate the objective of the legislation." *Puckett,* 235 N.C. at 267-68, 69 S.E.2d at 499-500; *see also O & M Indus.,* 360 N.C. at 266-68, 624 S.E.2d at 347-49 (construing broadly a "remedial" statute that codified a state constitutional provision "giving to mechanics

and laborers an adequate lien on the subject-matter of their labor").[7]  As a result, a number of relevant canons of statutory construction provide additional support for the manner in which we believe that the "plain meaning" of N.C.G.S. § 40A-51(a) should be understood.

Although defendant contends that "taken" and "taking" as used in N.C.G.S. § 40A-51(a) are terms of art that serve to limit statutory inverse condemnation proceedings to claims arising from actions or omissions undertaken for a public purpose, we do not find that argument persuasive.[8]  "Usually, words of a statute will be given their natural, approved, and recognized meaning," *Black v. Littlejohn*, 312 N.C. 626, 638, 325 S.E.2d 469, 478 (1985) (citing *In Re Martin,* 286 N.C. 66, 77, 209

---

[7] Defendant asserts that N.C.G.S. § 40A-51 is a procedural, rather than a remedial, statute given that the claimant's right to recover arises from the relevant constitutional provisions rather than from N.C.G.S. § 40A-51.  Although this assertion may, as a technical matter, be true, a decision in defendant's favor would deprive plaintiffs of access to the relatively clear statutory procedures spelled out in N.C.G.S. § 40A-51 and compel plaintiffs to seek redress using procedures that are less suited to the type of claim that they seek to assert.  As a result, we are inclined to believe that, when viewed in any realistic sense, N.C.G.S. § 40A-51 is intended to have a remedial effect by codifying any remedies that might otherwise be available to claimants in plaintiffs' position and should be treated as a remedial statute.

[8] To be sure, a number of decisions of this Court and the Court of Appeals have made reference to a "public use" requirement in generally defining an inverse condemnation claim. *See, e.g., State Highway Comm'n. v. L.A. Reynolds Co.,* 272 N.C. at 623, 159 S.E.2d at 202; *Kirby v. N.C. Dep't. of Transp*, 239 N.C. App. 345, 356, 769 S.E.2d 218, 228 (2015), *aff'd,* 368 N.C. 847, 786 S.E.2d 919 (2016); *Peach v. City of High Point*, 199 N.C. App. 359, 365, 683 S.E.2d 717, 722 (2009); *Adams Outdoor Advert. of Charlotte v. N.C. Dep't. of Transp.*, 112 N.C. App. 120, 122, 434 S.E.2d 666, 667 (1993).  However, this Court has never refused to recognize the availability of an inverse condemnation action on such grounds or imported such a requirement into the statutory inverse condemnation action recognized by N.C.G.S. § 40A-51.

S.E.2d 766, 774 (1974)). Admittedly, "[w]hen a term has long-standing legal significance, it is presumed that legislators intended the same significance to attach by use of that term, absent indications to the contrary." *Id.* at 639, 325 S.E.2d at 478 (quoting *Sheffield v. Consol. Foods Corp.,* 302 N.C. 403, 437, 276 S.E.2d 422, 427 (1981)). Although this Court's decisions sometimes utilize "taking" and "taken" in ways that are at variance from their ordinary meaning, *see, e.g., Kirby,* 368 N.C. at 855, 786 S.E.2d at 925 (noting that "[a] taking effectuated by eminent domain does not require 'an actual occupation of the land,' but 'need only be a substantial interference with elemental rights growing out of the ownership of the property' " (quoting *Long,* 306 N.C. at 198-99, 293 S.E.2d at 109)); *W. Carolina Power Co. v. Hayes,* 193 N.C. 104, 107, 136 S.E. 353, 354 (1927) (noting that "[i]t has also been held that for the purpose of determining the sum to be paid as compensation for land taken under the right of eminent domain," "the land is taken within the meaning of this principle when the proceeding is begun," rather than when the land was physically occupied), this Court has never gone so far as to hold that "taken" invariably means "taken by the power of eminent domain" or that "taking" means nothing more or less than a "taking for the public use."[9] On the contrary, defendant's

---

[9] Our decision in *State Highway Commission v. Batts*, 265 N.C. 346, 361-62, 144 S.E.2d 126, 137-38 (1965), in which we determined that the State Highway Commission was seeking to condemn land for a private purpose and described the removal of the landowner's trees in anticipation of the proposed condemnation as "an unauthorized trespass" for which the landowner had no recourse against the Commission, does not compel a determination that N.C.G.S. § 40A-51 necessarily incorporates a "public purpose" requirement given that *Batts* did not involve a statutory inverse condemnation claim pursuant to N.C.G.S. § 40A-51

attempt to read "public use," "public benefit," or similar expressions into N.C.G.S. § 40A-51(a) based upon the reference to N.C.G.S. § 40A-3(b) and (c) runs afoul of the general principle that "[c]ourts should 'give effect to the words actually used in a statute' and should neither 'delete words used' nor 'insert words not used' in the relevant statutory language during the statutory construction process." *Midrex Techs., Inc. v. N.C. Dep't of Revenue*, 369 N.C. 250, 258, 794 S.E.2d 785, 792 (2016) (quoting *Lunsford v. Mills*, 367 N.C. 618, 623, 766 S.E.2d 297, 301 (2014)). Finally, while "a court may consider the purpose of the statute" "[i]n ascertaining [the legislature's] intent," *State v. Tew*, 326 N.C. 732, 738, 392 S.E.2d 603, 607 (1990); *see also State v. Barnett*, 369 N.C. 298, 304, 794 S.E.2d 306, 311 (2016) (stating that, "[i]n ascertaining the legislative intent, courts should consider the language of the statute, the spirit of the statute, and what it seeks to accomplish" (quoting *State ex rel. Utils. Comm'n v. Pub. Staff*, 309 N.C. 195, 210, 306 S.E.2d 435, 444 (1983))), the statement of intent upon which defendant relies expressly applies to "condemning entities," their "authority to exercise the power of eminent domain," and the procedures through which those entities are entitled to assert their right of eminent domain, *see* N.C.G.S. § 40A-1(a) (2017) (stating that "it is the intent of the General Assembly that . . . the uses set out in [N.C.]G.S. [§] 40-3 are the exclusive uses for which the authority to exercise the power of eminent domain is granted to private condemnors,

(and, in fact, was decided before that statute was enacted). The statement about the absence of any reference to N.C.G.S. § 40A-51 can be made about our decision in *Clark v. Asheville Contr'g Co.,* 316 N.C. 475, 485-87, 342 S.E.2d 832, 838 (1986).

local public condemnors, and other public condemnors"); *id.* § 40A-1(b) (2017) (providing that "[i]t is the intent of the General Assembly that the procedures provided by this Chapter shall be the exclusive condemnation procedures to be used in this State by all private condemnors and all local public condemnors"), rather than to the extent to which individuals whose property has been taken are entitled to assert a statutory inverse condemnation claim pursuant to N.C.G.S. § 40A-51. As a result, we are not persuaded by any of the arguments that defendant has advanced in support of its request that we affirm the Court of Appeals' decision with respect to this issue.

"A frequent recurrence to fundamental principles is absolutely necessary to preserve the blessings of liberty." N.C. Const. art. I, § 35.

> While North Carolina does not have an express constitutional provision against the "taking" or "damaging" of private property for public use without payment of just compensation, this Court has allowed recovery for a taking on constitutional as well as common law principles. We recognize the fundamental right to just compensation as so grounded in natural law and justice that it is part of the fundamental law of this State, and imposes upon a governmental agency taking private property for public use a correlative duty to make just compensation to the owner of the property taken. This principle is considered in North Carolina as an integral part of " the law of the land" within the meaning of Article I, Section 19 of our State Constitution.

*Beroth Oil Co. v. N.C. Dep't of Transp.*, 367 N.C. 333, 340-41, 757 S.E.2d 466, 472-73 (2014) (quoting *Long,* 306 N.C. at 195-96, 293 S.E.2d at 107-08 (footnotes and

citations omitted)). " '[I]nverse condemnation [ ]' [is] a term often used to designate 'a cause of action against a governmental defendant to recover the value of property which has been taken in fact by the governmental defendant, even though no formal exercise of the power of eminent domain has been attempted by the taking agency.' " *City of Charlotte v. Spratt,* 263 N.C. 656, 662-63, 140 S.E.2d 341, 346 (1965) (quoting *City of Jacksonville v. Schumann,* 167 So. 2d 95, 98 (Fla. Dist. Ct. App. 1964), *cert. denied,* 172 So.2d 597 (1965)). Although a condemning entity must establish that a proposed taking will further a public purpose before a condemnation can be authorized, we can see no reason why a reciprocal burden to establish the existence of a public purpose should be imposed upon a property owner who has been deprived of his or her property by governmental action taken for a non-public purpose. *See Lloyd v. Town of Venable,* 168 N.C. 531, 535, 84 S.E. 855, 857 (1915) (noting that "the owner who consents to a taking of his property, when no legal right or power to do so exists, should receive the same measure of justice as in the other case, where the power does exist"); *see also Kirkpatrick v. City of Jacksonville,* 312 So. 2d 487, 490 (Fla. Dist. Ct. App. 1975) (per curiam) ("The proviso that a landowner's property may be taken from him only 'for a public purpose' is for the landowner's protection and is not placed in the Constitution as a sword to be used against the landowner when the state has summarily taken his property without due process."); *Harris Cty. Flood Control Dist. v. Kerr,* 499 S.W.3d 793, 813 (Tex. 2016) *(Lehrmann, J., concurring)* (stating that "it makes no sense to say that a property owner is entitled to

compensation if the government does the right thing but not if it does the wrong thing"). In light of these fundamental principles and the manner in which N.C.G.S. § 40A-51(a) is worded, we cannot conclude that the General Assembly intended to make the availability of the statutory inverse condemnation remedy provided by N.C.G.S. § 40A-51 dependent upon the purpose which led to the infliction of the injury for which the affected property owner seeks redress. As a result, we reverse the Court of Appeals' determination to the contrary and remand this case to the Court of Appeals for consideration of defendant's remaining challenges to the trial court's order.

REVERSED AND REMANDED.