IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-420

Filed 7 January 2026

Orange County, No. 22CVS000463-670

US RIGHT TO KNOW, Plaintiff,

v.

THE UNIVERSITY OF NORTH CAROLINA AT CHAPEL HILL, Defendant.

Appeal by Plaintiff from judgment entered 31 October 2024 by Judge Alyson Adams Grine in Orange County Superior Court. Heard in the Court of Appeals 14 October 2025.

> *Walker Kiger, PLLC, by David "Steven" Walker and Korey D. Kiger, for Plaintiff-Appellant.*
>
> *Attorney General Jeff Jackson, by Deputy Solicitor General James W. Doggett and Special Deputy Attorney General Elizabeth Branch Jenkins, and University of North Carolina at Chapel Hill Office of University Counsel, by Marla S. Bowman, for Defendant-Appellee.*

GRIFFIN, Judge.

Plaintiff appeals from the trial court's judgment entered on 31 October 2024 granting summary judgment in part to Plaintiff and in part to Defendant. Plaintiff contends the trial court erred in its interpretation of N.C. Gen. Stat. § 116-43.17. We disagree and affirm the trial court.

## I.  Factual and Procedural Background

Plaintiff describes itself as "an investigative research group that promotes transparency for public health[, which] has been investigating the origins of COVID-19 and the virus that causes it." Plaintiff's investigation "led [it] to request public records from [Defendant] regarding the work of Dr. Ralph Baric and his associations with the Wuhan Institute of Virology."[1] Plaintiff submitted eight public records requests to Defendant beginning in July 2020 and ending in October 2021, requesting records spanning from January 2009 to October 2021 from Dr. Baric and other personnel employed by Defendant. Defendant produced over 130,000 pages of "responsive documents" but withheld 5,205 documents pursuant to N.C. Gen. Stat. §§ 126-24, 132-1, 116-43.17, and the Federal Education Rights and Privacy Act.

On 18 April 2022, Plaintiff initiated this action, claiming Defendant violated the Public Records Act, N.C. Gen. Stat. § 132-1 (2023), believing Defendant "may be interpreting [N.C. Gen. Stat. § 116-43.17 (2023)] in an overly broad manner." On 13 March 2023, Defendant filed its answer, and, on 21 July 2023, Defendant filed its motion for judgment on the pleadings. On 21 November 2023, the trial court ordered the appointment of a referee before it would rule on Defendant's motion. On 11 December 2023, the trial court appointed a referee to determine whether the contested records were exempt from the Public Records Act, to whom the trial court ordered "[t]he parties shall submit . . . concise briefs detailing each party's

---

[1] Dr. Ralph Baric is the William R. Kenan, Jr. Distinguished Professor in the Department of Epidemiology and Professor in the Department of Microbiology and Immunology.

interpretation of [section] 116-43.17 and any other related law." The trial court also ordered Defendant to provide specified documents and a document log to the referee, which were protected by a protective order.

On 30 July 2024, the referee issued his report. The referee explained the briefing he received from the parties, which he used to determine which documents would need to be produced under each of the competing definitions:

> 9. [Plaintiff], arguing for the narrowest interpretation of the statute, claims (1) "of a proprietary nature" applies to data, records, and information; and (2) "research" modifies data, records, and information.
>
> 10. [Defendant] likewise acknowledges that the term "research" should modify data, records, and information. However, it is [Defendant]'s position that "of proprietary nature" only applies to research information, with research data and research records being protected regardless of whether they are of a proprietary nature.
>
> . . . .
>
> 13. [Plaintiff's] view is that "proprietary" in this context is equivalent to a trade secret. . . . .
>
> . . . .
>
> 15. The definitions of "proprietary" offered by [Defendant] are broader, and include "ownership interest[s], whether characterized as property, protectable, or an exclusive right." [Defendant] specifically argues (1) copyrights which have not been registered fall within this definition of "proprietary," and (2) copyright protection attaches to the records at issue, making them protected from disclosure.

The referee then determined how many documents would have to be disclosed based on his review of the documents under each definition and did not adopt either party's definition.

On 31 October 2024, the trial court adopted the referee's report and granted summary judgment in part to Defendant and in part to Plaintiff, ruling, in relevant part:

> 10. The [c]ourt reads [section] 116-43.17 such that "Research" modifies each of "data," "records," and "information."
>
> 11. The [c]ourt reads [section] 116-43.17 such that "of a proprietary nature" only modifies "information," and does not modify either "data" or "records." This reading is consistent with *Lockhart v. United States*, 577 U.S. 347, 351 (2016), in which the Supreme Court applied the "last antecedent" rule of statutory interpretation, pursuant to which "limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows." The statute at issue in *Lockhart* is constructed similarly to [section] 116-43.17, and the Court's reasoning is therefore persuasive.
>
> 12. Accordingly, the [c]ourt concludes that pursuant to [section] 116-43.17, the following are not public records when they are produced or collected by or for state institutions of higher learning in the conduct of commercial, scientific, or technical research and have not been patented, published, or copyrighted:
>
>> a. Research data
>> b. Research records
>> c. Research information of proprietary nature.
>
> 13. The phrase "of a proprietary nature" is not defined in [section] 116-43.17. In the absence of delineation, the

[c]ourt interprets the phrase broadly to include information in which the owner has protectable interest. *See Proprietary Information,* Black's Law Dictionary (11th ed. 2019). This definition includes records to which copyright ownership attaches.

Plaintiff timely appeals.

## II.   Analysis

In this case, we are presented with a question of statutory interpretation regarding an exception from the Public Records Act, section 132-1, contained in section 116-43.17. Plaintiff presents two arguments on appeal regarding section 116-43.17. First, Plaintiff argues "the trial court erred in concluding that the phrase 'of a proprietary nature' in [section] 116-43.17 only modified the word 'information' and does not modify either 'data' or 'records.'" Second, Plaintiff argues "the trial court erred in interpreting the phrase 'proprietary nature' in [section] 116-43.17 broadly to 'to include information in which the owner has a protectable interest.'"[2] We disagree.

---

[2] Defendant presents us with a potential third issue of whether "the [trial] court ordered moot the issue of whether the last-antecedent canon applies to section 116-43.17." In support of this position, Defendant argues the trial court ordered it "to produce *all* documents that the referee had designated as not 'proprietary' under [Defendant]'s proposed 'definition' of proprietary. In line with the [trial] court's order and the referee's report, [Defendant] has since produced all such documents to [Plaintiff], no matter whether the documents qualify as non-proprietary data or records that could have been withheld if the canon applied." However, even though the trial court adopted the referee's report, the trial court then interpreted the statute after the referee's report, which expressly did not offer the referee's "view" on the statute. This legal conclusion by the trial court has been appealed.

Even assuming arguendo the "last antecedent canon issue" is moot, "[an appellate court] may, if it chooses, consider a question that involves a matter of public interest, is of general importance, and deserves prompt resolution." *130 of Chatham, LLC v. Rutherford Elec. Membership Corp.*, 241 N.C. App. 1, 8, 771 S.E.2d 920, 926 (2015) (alterations in original) (quoting *N.C. State Bar v. Randolph,* 325 N.C. 699, 701, 386 S.E.2d 185, 186 (1989)). Thus, we review the trial court's legal determination to use the last antecedent canon to interpret section 116-43.17.

Our General Statutes provide for the public to access public records in section 132-1.

> (a) "Public record" or "public records" shall mean all documents, papers, letters, maps, books, photographs, films, sound recordings, magnetic or other tapes, electronic data-processing records, artifacts, or other documentary material, regardless of physical form or characteristics, made or received pursuant to law or ordinance in connection with the transaction of public business by any agency of North Carolina government or its subdivisions. Agency of North Carolina government or its subdivisions shall mean and include every public office, public officer or official (State or local, elected or appointed), institution, board, commission, bureau, council, department, authority or other unit of government of the State or of any county, unit, special district or other political subdivision of government.
>
> (b) The public records and public information compiled by the agencies of North Carolina government or its subdivisions are the property of the people. Therefore, it is the policy of this State that the people may obtain copies of their public records and public information free or at minimal cost unless otherwise specifically provided by law. As used herein, "minimal cost" shall mean the actual cost of reproducing the public record or public information.

N.C. Gen. Stat. § 132-1(a), (b).

"The [Public Records] Act is intended to be liberally construed to ensure that governmental records be open and made available to the public, subject only to a few limited exceptions." *DTH Media Corp. v. Folt*, 374 N.C. 292, 300, 841 S.E.2d 251, 257–58 (2020). "The Public Records Act thus allows access to all public records in an agency's possession unless either the agency or the record is specifically exempted

from the statute's mandate." *Id.* at 300–01, 841 S.E.2d at 258 (citation modified).

"Exceptions and exemptions to the Public Records Act must be construed narrowly."

*Id.* (quoting *Carter-Hubbard Publ'g Co., Inc. v. WRMC Hosp. Operating Corp.,* 178

N.C. App. 621, 624, 633 S.E.2d 682, 684 (2006).

The exception at issue in this case is contained in section 116-43.17.

> Research data, records, or information of a proprietary
> nature, produced or collected by or for state institutions of
> higher learning in the conduct of commercial, scientific, or
> technical research where the data, records, or information
> has not been patented, published, or copyrighted are not
> public records as defined by G.S. 132-1.

N.C. Gen. Stat. § 116-43.17.

Our Supreme Court has clearly laid out how our Courts are to engage in

statutory interpretation:

> The goal of statutory construction is to carry out the intent
> of the legislature. When construing a statute, we first
> examine the plain words of the statute because the text of
> the statute is the best indicia of legislative intent. If the
> plain language of the statute is unambiguous, we apply the
> statute as written. If the plain language of the statute is
> ambiguous, however, we then look to other methods of
> statutory construction such as the broader statutory
> context, the structure of the statute, and certain canons of
> statutory construction to ascertain the legislature's intent.

*Jackson v. Home Depot U.S.A., Inc.*, 388 N.C. 109, 114–15, 919 S.E.2d 199, 204 (2025)

(citation modified).

We review the appealed issues de novo. *James H.Q. Davis Tr. v. JHD Props., LLC*, 387 N.C. 19, 23, 910 S.E.2d 652, 657 (2025); *Philip Morris USA, Inc. v. N.C. Dep't of Revenue*, 386 N.C. 748, 751, 909 S.E.2d 197, 201 (2024).

## A. Modification

Plaintiff first argues "the trial court erred in concluding that the phrase 'of a proprietary nature' in [section] 116-43.17 only modified the word 'information' and does not modify either 'data' or 'records.'" We turn to established methods of statutory construction to clarify any statutory ambiguity within the text. *See Jackson*, 388 N.C. at 114–15, 919 S.E.2d at 204.

In *Philip Morris*, our Supreme Court applied the "doctrine of the last antecedent," stating, "relative and qualifying words, phrases, and clauses ordinarily are to be applied to the word or phrase immediately preceding rather than extending to or including others more remote." 386 N.C. at 757, 909 S.E.2d at 204 (citation modified); *see also Wilkie v. City of Boiling Spring Lakes*, 370 N.C. 540, 548–49, 809 S.E.2d 853, 859 (2018) (applying the doctrine of the last antecedent); *HCA Crossroads Residential Ctrs., Inc. v. N.C. Dep't of Hum. Res., Div. of Facility Servs., Certificate of Need Section*, 327 N.C. 573, 578, 398 S.E.2d 466, 469 (1990) (applying the doctrine of the last antecedent). Of course, "[c]anons of construction are interpretive guides, not metaphysical absolutes. They should not be applied to reach outcomes plainly at odds with legislative intent." *N.C. Dep't of Env't Quality, Div. of Water Res. v. N.C. Farm*

*Bureau Fed'n, Inc.*, ___ N.C. ___, 921 S.E.2d 121, 128 (2025) (quoting *Town of Midland v. Harrell*, 385 N.C. 365, 376, 892 S.E.2d 845, 853 (2023)).

Our Supreme Court declined to use the canon of last antecedent in *N.C. Department of Environmental Quality, Division of Water Resources*, when evaluating a similar construction as the statutory construction at issue here. *See N.C. Dep't of Env't Quality, Div. of Water Res.*, ___ N.C. at ___, 921 S.E.2d at 128; *compare* N.C. Gen. Stat. § 150B-2 (2023) ("Any agency regulation, standard, or statement of general applicability. . . ."), *with* N.C. Gen. Stat. § 116-43.17 ("Research data, records, or information of a proprietary nature. . . ."). There, our Supreme Court held "of general applicability" to modify "regulation, standard, or statement." *N.C. Dep't of Env't Quality, Div. of Water Res.*, ___ N.C. at ___, 921 S.E.2d at 128. However, our Supreme Court did not completely reject the canon of last antecedent; rather, it held applying the canon of last antecedent specifically to section "150B-2(8a) would lead to extreme, if not absurd, results . . . . that the legislature could not have intended such an outcome." *Id.*

Here, the trial court read section "116-43.17 such that 'of a proprietary nature' only modifies 'information,' and does not modify either 'data' or 'records,'" citing the Supreme Court of the United States decision *Lockhart v. United States*, 577 U.S. 347

(2016).[3]  In *Lockhart*, the Supreme Court evaluated a similarly constructed statute as the portion of section 116-43.17 at issue, 18 U.S.C. § 2252(b)(2), which stated "a prior conviction . . . under the laws of any State relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward."  577 U.S. at 349 (quoting 18 U.S.C. § 2252(b)(2) (2015)).  Applying the last antecedent canon, the Supreme Court held "the phrase 'involving a minor or ward' modifies only the phrase that it immediately follows: 'abusive sexual conduct.'  As a corollary, it also suggests that the phrases 'aggravated sexual abuse' and 'sexual abuse' are not so constrained." *Id.* at 352.  Later, in *Wilkie*, our Supreme Court cited *Lockhart* as support in its application of the last antecedent canon to N.C. Gen. Stat. § 40A-51(a) (2017).  370 N.C. at 549, 809 S.E.2d at 859.

Plaintiff argues this Court should instead apply the series-qualifier canon found in *Facebook, Inc. v. Duguid*, 592 U.S. 395 (2021).  The Supreme Court defined this canon as, "[u]nder conventional rules of grammar, '[w]hen there is a straightforward, parallel construction that involves all nouns or verbs in a series,' a modifier at the end of the list 'normally applies to the entire series.'" *Facebook*, 592 U.S. at 402–03 (quoting A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 147 (2012) (Scalia & Garner)).  There, the Supreme Court decided

---

[3] "[I]t must be remembered that in construing and applying our laws and the Constitution of North Carolina, this Court is not bound by the decisions of federal courts, including the Supreme Court of the United States, although in our discretion we may conclude that the reasoning of such decisions is persuasive." *State ex rel. Martin v. Preston*, 325 N.C. 438, 449–50, 385 S.E.2d 473, 479 (1989).

whether "using a random or sequential number generator" modified "store" and "produce" or just "produce" in the statutory text "to store or produce telephone numbers to be called, using a random or sequential number generator." *Id.* at 402 (quoting 47 U.S.C. § 227(a)(1)).

The Supreme Court then applied the series-qualifier canon to the clause at issue in *Facebook* because "the modifier at issue immediately follow[ed] a concise, integrated clause," *id.* at 403 (citing *Cyan, Inc.* v. *Beaver Cnty. Emp. Ret. Fund*, 583 U.S. 416, 440 (2018)), and the interpretation "heed[ed] the commands of its punctuation" with the comma in the statute indicating "Congress intended the phrase 'using a random or sequential number generator' to apply equally to both preceding elements," *id.* at 403–04 (quoting *U.S. Nat. Bank of Ore. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 454 (1993)). The Supreme Court then addressed the series-qualifier canon's interplay with the canon of the last antecedent, saying "[t]he rule of the last antecedent is context dependent. This Court has declined to apply the rule where, like here, the modifying clause appears after an integrated list." *Id.* at 404 (citing *Jama v. Immigr. and Customs Enf't*, 543 U.S. 335, 344, n. 4 (2005)).[4]

---

[4] Footnote 4 in *Jama* partially finds support in *United States v. Bass*, 404 U.S. 336 (1971). In *Bass*, the Supreme Court held the phrase "in commerce or affecting commerce" modified "receives, possesses, or transports" in the statutory text "receives, possesses, or transports in commerce or affecting commerce." *Id.* at 350; 18 U.S.C. § 1202(a)(1). However, the Supreme Court's basis for this interpretation was the rule of lenity, *id.* at 347, and "the federal-state balance," *id.* at 349; neither of which are at issue nor applicable here.

We decline to apply the series-qualifier canon here because of section 116-43.17's text's context and intent. Rather, because the application of the last antecedent canon would not lead to absurd results as in *N.C. Department of Environmental Quality, Division of Water Resources*, we apply the last antecedent canon to the case at hand just as both the Supreme Courts of the United States and North Carolina did in *Philip Morris*, *Wilkie*, *HCA Crossroads Residential Centers*, and *Lockhart*.

First, the context of the plain text does not indicate the phrase "of a proprietary nature" modifies any other term apart from "information." Here, like in *Lockhart*, the phrase "or information of a proprietary nature" is grammatically separated by punctuation—commas—indicating that the prepositional phrase "of a proprietary nature" solely modifies the noun preceding it, "information." *See Lockhart*, 577 U.S. at 352 (applying the last antecedent canon to hold "the phrase 'involving a minor or ward' modifies only the phrase that it immediately follows: 'abusive sexual conduct'" in 18 U.S.C. § 2252(b)(2)).

Further, unlike in *Facebook*, the phrase "of a proprietary nature" is not set apart by a comma *after* an integrated clause or "*after* an integrated list." *See Facebook*, 592 U.S. at 396 (clarifying "the [Supreme] Court has declined to apply [the last antecedent canon] in the specific context where . . . the modifying clause appears after an integrated list"). Rather, "of a proprietary nature" is a part of the integrated list, which consists of (1) research data, (2) records, or (3) information of a proprietary

nature. Thus, "the context [of section 116-43.17] does not clearly suggest that this reference ['of a proprietary nature'] is intended to apply to anything other than the immediately preceding expression," "information." *Wilkie*, 370 N.C. at 549, 809 S.E.2d at 859.

Second, the legislature's intent, as derived from the text, supports the application of the last antecedent canon. While the Public Records Act "is intended to be liberally construed" and "exemptions must be construed narrowly," *DTH Media Corp.*, 374 N.C. at 300–01, 841 S.E.2d at 257–58 (citation modified), "the text of the statute is the best indicia of legislative intent," *Jackson*, 388 N.C. at 114–15, 919 S.E.2d at 204. Moreover, "[w]hen multiple statutes address a single matter or subject, they must be construed together, *in pari materia*, to determine the legislature's intent." *DTH Media Corp.*, 374 N.C. at 300, 841 S.E.2d at 257 (quoting *Carter-Hubbard Publ'g Co., Inc.*, 178 N.C. App. at 624, 633 S.E.2d at 684).

As discussed, in section 116-43.17, the General Assembly placed "of a proprietary nature" within a clause with "information" separated by punctation, which by context indicated the phrase modified only "information." However, in other exceptions and exemptions from the Public Records Act, the General Assembly used the term "proprietary information" and clearly placed the term proprietary in positions at the beginning of the statutory text, indicating proprietary modified multiple terms or clauses. *See, e.g.,* N.C. Gen. Stat. § 132-1.2(9) (2025) (stating a public agency is not required to disclose anything that "[r]eveals proprietary design

work or work product included in a proposal that is submitted to the Department of Transportation for consideration"); N.C. Gen. Stat. § 132-1.1(g) (2025) ("Proprietary computer code written by and for use by an agency of North Carolina government or its subdivisions is not a public record as defined in G.S. 132-1."); N.C. Gen. Stat. § 143B-1412 (2025) ("All proprietary information submitted to the 911 Board or the State Auditor is confidential. Proprietary information submitted pursuant to this Part is not subject to disclosure under Chapter 132 of the General Statutes."). Thus, the General Assembly exempted proprietary information in other contexts from the Public Records Act and used different sentence structures than the one at issue when conveying the term "proprietary" modified more than one term, supporting the General Assembly's intent for the phrase "of a proprietary nature" to only modify "information" here.

Therefore, the phrase "of a proprietary nature" in section 116-43.17 solely modifies "information."

**B. Definition**

Second, Plaintiff argues "the trial court erred in interpreting the phrase 'proprietary nature' in [section] 116-43.17 broadly 'to include information in which the owner has a protectable interest.'" Specifically, Plaintiff argues "[t]reating the word 'proprietary' to be defined as a trade secret is an appropriate and straightforward reading that would advance the dual purposes of the legislature to

have access to records as broad as possible while reading exclusions as narrow as possible."

As addressed, the Public Records Act "is intended to be liberally construed" and "exemptions must be construed narrowly," *DTH Media Corp.*, 374 N.C. at 300–01, 841 S.E.2d at 257–58 (citation modified), but "the text of the statute is the best indicia of legislative intent," *Jackson*, 388 N.C. at 114–15, 919 S.E.2d at 204. "In the construction of any statute, . . . words must be given their common and ordinary meaning, nothing else appearing." *Appeal of Clayton-Marcus Co., Inc.*, 286 N.C. 215, 219, 210 S.E.2d 199, 202–03 (1974) (citation omitted).

Here, in the absence of any statutory definition for "of a proprietary nature," the trial court defined the phrase in section 116-43.17 to be "information in which the owner has protectable interest," citing *Proprietary Information,* Black's Law Dictionary (11th ed. 2019).

Having decided "of a proprietary nature" modifies "information," we look to the "common and ordinary meaning" of the proprietary information. Black's Law Dictionary defines "proprietary information" as "[i]nformation in which the owner has a protectable interest." *Proprietary Information,* Black's Law Dictionary (12th ed. 2024). The American Heritage College Dictionary defines proprietary, in relevant part, as "[e]xclusively owned; private," "[b]efitting an owner," and "[o]wned by a private individual or corporation under a trademark or patent." *Proprietary*, The American Heritage College Dictionary (3rd. ed. 1997). Further, The American

Heritage College Dictionary defines, in relevant part, "information" as "[k]knowledge derived from study, experience, or instruction" and "a collection of facts or data." *Information*, The American Heritage College Dictionary (3rd. ed. 1997). Although not on appeal, the trial court also found research to modify information, thus the excluded information would be "[r]esearch information of proprietary nature," but this would not change the definition of "proprietary information." Rather, it confines the "information in which the owner has protectable interest" to the field of "scholarly or scientific investigation or inquiry," *Research*, The American Heritage College Dictionary (3rd. ed. 1997), or the "[s]erious study of a subject with the purpose of acquiring more knowledge, discovering new facts, or testing new ideas," *Research*, Black's Law Dictionary (12th ed. 2024). Therefore, the trial court was correct in finding "proprietary information" to be "information in which the owner has protectable interest" as it relates to research.

Plaintiff would have us define proprietary information as a trade secret, based in part on Black's Law Dictionary's citing "trade secret" as a related term for "proprietary information." *See Proprietary Information*, Black's Law Dictionary (12th ed. 2024) ("Information in which the owner has a protectable interest. See *TRADE SECRET*." (emphasis added)). However, our General Statutes define "trade secret" as,

> (3) "Trade secret" means business or technical information, including but not limited to a formula, pattern, program, device, compilation of information, method, technique, or

process that:

> a. Derives independent actual or potential commercial value from not being generally known or readily ascertainable through independent development or reverse engineering by persons who can obtain economic value from its disclosure or use; and

> b. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

N.C. Gen. Stat. § 66-152 (2023). While "proprietary information" includes trade secrets, "proprietary information" extends beyond the definition of trade secrets. Thus, because the General Assembly chose to use "information of a proprietary nature" and not "trade secret," we decline to, and in fact cannot, swap the definition of "trade secret" for "proprietary information." *See State v. Piland*, 263 N.C. App. 323, 337, 822 S.E.2d 876, 887 (2018) ("[T]his Court cannot delete words or insert words not used in a statute." (quoting *State ex rel. Utils. Comm'n v. N.C. Sustainable Energy Ass'n*, 254 N.C. App. 761, 764, 803 S.E.2d 430, 433 (2017)).

Therefore, the trial court did not err in defining "proprietary information" pertaining to research to "include information in which the owner has protectable interest."

### III. Conclusion

We hold there was no error in the trial court's 31 October 2024 judgment and affirm the trial court's interpretation of section 116-43.17.

AFFIRMED.

Chief Judge DILLON and Judge FLOOD concur.