IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA 24-1100

Filed 17 September 2025

North Carolina Industrial Commission, No. TA-26019

C.R. ENGLAND, INC., Plaintiff,

v.

NORTH CAROLINA DEPARTMENT OF TRANSPORTATION, Defendant.

Appeal by defendant from decision and order entered for the Full Commission by Chairman Philip A. Baddour, III in the North Carolina Industrial Commission. Heard in the Court of Appeals 28 August 2025.

> *Young Moore & Henderson, P.A., by Angela F. Craddock and David M. Duke, for plaintiff-appellee.*

> *Attorney General Jeff Jackson, by Special Deputy Attorney General David D. Larson, Jr., for defendant-appellant.*

ARROWOOD, Judge.

North Carolina Department of Transportation ("NCDOT") appeals from a decision and order by the Full Commission of the North Carolina Industrial Commission awarding C.R. England ("plaintiff") recovery of contribution. For the following reasons, we reverse the decision and order.

I.     Factual Background

On 13 February 2014, North Carolina was under a declared state of emergency due to Winter Storm Pax. That evening, Cardell Gayfield ("Mr. Gayfield") was

operating a "Freightliner" bobtail tractor with no trailer on I-40W near the Wake County/Johnston County line. Mr. Gayfield was employed by plaintiff as a driver, and the Freightliner was registered to and owned by plaintiff. At that time, both lanes of I-40 east of the Wake County/Johnston County line were cleared from snow and ice. However, west of the Wake County/Johnston County line, only the left lane and shoulder had been cleared, leaving the right lane covered in snow and ice. As Mr. Gayfield crossed into Johnston County, he encountered the snow and ice, and his tractor lost traction. The tractor spun and landed perpendicular to the road.

After Mr. Gayfield's tractor lost traction, Nathaniel Williams similarly encountered the snow and ice and lost control of his vehicle. Meanwhile, Larry Kepley, who was driving in the left lane of I-40, saw the tractor and pulled over to provide assistance. Both Mr. Williams and Mr. Kepley were standing outside near the scene of the accident when they were struck and killed by another driver.

The estates of Mr. Williams and Mr. Kepley each brought a claim against plaintiff for wrongful death on 8 February 2015 and 13 February 2015, respectively. On 14 December 2015, plaintiff settled with Mr. Williams' estate for $1,050,000. On 8 June 2016, plaintiff settled with Mr. Kepley's estate for $600,000. Meanwhile, the statute of limitations for wrongful death claims arising from the accident on 13 February 2014 expired on 13 February 2016. *See* N.C.G.S. § 1-53(4) (limiting wrongful death claims to two years after the date of death). Plaintiff then filed a *Claim for Damages Under Tort Claims Act* with the North Carolina Industrial

Commission on 30 November 2016, seeking contribution from NCDOT. Plaintiff alleged that "various named and unnamed employees of [NCDOT]" were negligent in the design and execution of lane adjustments on I-40W, by failing to warn approaching traffic of the dangerous conditions, and in the training, supervision, and execution of snow removal. Plaintiff claimed that NCDOT's negligence contributed to the traffic accident on 13 February and that the plaintiff was therefore entitled to recovery of contribution for the settlements with Mr. Williams' and Mr. Kepley's estates.

NCDOT filed a motion to dismiss on 3 January and 5 January 2017, claiming that plaintiff did not properly preserve its contribution claim through its settlement agreements. The motion was denied on 28 March 2017, and NCDOT appealed the denial to the Full Commission. On 19 April 2018, the Full Commission dismissed NCDOT's appeal as interlocutory and remanded the matter for further proceedings. After a full evidentiary hearing on the merits, Chief Deputy Commissioner Howell issued a 7 July 2023 order finding that plaintiff had not established NCDOT's negligence and was thus not entitled to contribution. Plaintiff appealed to the Full Commission.

The Full Commission reversed on 23 July 2024. As a preliminary matter, the Full Commission determined that NCDOT did not properly preserve for review the issue of whether plaintiff's settlements preserved its contribution claim. The Full Commission also found that NCDOT was negligent in "fail[ing] to exercise reasonable

care to implement reasonable training and dry run protocols for snowplow drivers necessary for adequate maintenance of the roadways during a winter storm event." Lastly, because the negligent training occurred prior to the declared state of emergency on 11 February, the Full Commission determined that Emergency Management Act ("EMA") immunity did not apply.

To support its finding of negligence, the Full Commission noted that while NCDOT's Safe Operating Procedures required operators inspecting snowplow routes to "note or mark" hazards, it did not require them to make documentation of or otherwise memorialize those hazards. The Full Commission found this procedure unreasonable as the snowplow routes are long, hard to visualize during a storm, and may not be cleared by the same operator who originally inspected the route, increasing the possibility that hazards will be overlooked or forgotten.

NCDOT filed notice of appeal to this Court on 20 August 2024.

## II.     Discussion

NCDOT raises three issues on appeal:  1) whether plaintiff's contribution claim is barred by EMA immunity; 2) whether the Full Commission had jurisdiction to decide whether plaintiff took the proper steps to preserve its contribution claim against NCDOT; and 3) whether plaintiff took the proper steps to preserve its contribution claim against NCDOT.  For the following reasons, we reverse the Commission's order.

### A.     Standard of Review

Appeals from the Industrial Commission "shall be for errors of law only under the same terms and conditions as govern appeals in ordinary actions, and the findings of fact of the Commission shall be conclusive if there is any competent evidence to support them." N.C.G.S. § 143-293 (2025). Therefore, the Court's inquiry on appeal is "limited to two questions: (1) whether competent evidence exists to support the Commission's findings of fact, and (2) whether the Commission's findings of fact justify its conclusions of law and decision." *Dawson v. N.C. Dep't. of Env't and Nat. Res.*, 204 N.C. App. 524, 527 (2010). Conclusions of law are reviewed *de novo*. *Shera v. N.C. State Univ. Veterinary Teaching Hosp.*, 219 N.C. App. 117, 120 (2012).

### B.      Emergency Management Act Immunity

Plaintiff contends that EMA immunity applies only to negligence committed "while carrying out emergency response functions during an actual or imminent emergency." Meanwhile, NCDOT argues that EMA immunity extends to activities related to emergency management outside the actual occurrence or imminence of an emergency. This issue is one of statutory interpretation and of first impression before this Court.

"[T]he intent of the legislature controls the interpretation of a statute." *C Investments 2, LLC v. Auger*, 383 N.C. 1, 8 (2022) (quoting *State v. Fletcher*, 370 N.C. 313, 327–28 (2017)). The Court shall "first look to the plain language [of a statute], as the actual words of the legislature are the clearest manifestation of its intent." *Cohane v. Home Missioners of America*, 387 N.C. 1, 7–8 (2025) (quoting *Fearrington*

*v. City of Greenville*, 386 N.C. 38, 52 (2024)). "[W]ords and phrases are interpreted in their statutory context, and traditional rules of grammar apply. Where the statute's language is clear and unambiguous, courts must construe it using its plain meaning." *Id.* (citations omitted).

The EMA operates in conjunction with sovereign immunity and the Tort Claims Act ("TCA"). Generally, the doctrine of sovereign immunity grants the State immunity from suit absent a waiver. *Meyer v. Walls*, 347 N.C. 97, 104 (1997). The TCA provides such a waiver of immunity for negligence claims against the State and any of its departments. *Id.*; N.C.G.S. § 143-291(a) (2025). However, the EMA effectively retracts the TCA's waiver and reinstates immunity from negligence claims against the State where the State is engaged in emergency management. N.C.G.S. § 166A-19.60(a) (2025); *Williams v. Charlotte-Mecklenburg Schs. Bd. of Educ.*, 292 N.C. App. 542, 546 (2024). The EMA provides that "[n]either the State nor any political subdivision thereof . . . shall be liable for the death of or injury to persons, or for damage to property as a result of any [emergency-management] activity." *Williams*, 292 N.C. App. at 546 (quoting N.C.G.S. § 166A-19.60(a)). In turn, emergency management is defined as "measures . . . to minimize the adverse effect of any type emergency, which includes the never-ending preparedness cycle of planning, prevention, mitigation, warning, movement, shelter, emergency assistance, and recovery." N.C.G.S. § 166A-19.3(8) (2025).

For example, in *Williams,* this Court extended EMA immunity where a school

bus collided with another vehicle and caused property damage while delivering food to students during the COVID-19 pandemic. *Williams*, 292 N.C. App. at 546–47. There, at the time of the collision, the bus was on its route delivering food to students. *Id.* at 547. The Court reasoned that because the bus was being used for an emergency management purpose—minimizing the adverse effects of the COVID-19 emergency "by providing food to students who might otherwise go hungry"—at the time of the accident, EMA immunity applied. *Id.*

The plain language of the EMA contemplates pre-emergency preparations and provides immunity. N.C.G.S. § 166A-19.3(8) states that emergency management is a "*never-ending* preparedness cycle" which includes "planning." N.C.G.S. § 166A-19.3(8) (emphasis added). The broad definition of emergency management requires that EMA immunity encompass all stages of preparing for emergencies, including training personnel to respond to emergencies. Limiting EMA immunity only to actions made during an active or imminent emergency would impose an end to the cycle of emergency management, contrary to the statute. Thus, whether EMA immunity applies is not simply a question of timing but rather of relation to emergency "planning, prevention, mitigation, warning, movement, shelter, emergency assistance, and recovery." *See* N.C.G.S. § 166A-19.3(8).

The negligence alleged in this case occurred in preparation of an emergency and falls under the EMA. NCDOT's training and adoption of snowplow operating procedures is done in preparation for winter weather events. Indeed, the act of

clearing roads of snow and ice is meant to "minimize the adverse effects" of a winter storm by making the roads safer to use. Accordingly, the training of snowplow operators is "an important function of safety" and a crucial step in planning for emergencies. As such, though these preparations took place before the occurrence of winter storm Pax, they are part of the emergency preparedness cycle and protected by EMA immunity. Therefore, we find that plaintiff's contribution claim against NCDOT is barred by EMA immunity.

## C. Preservation of Contribution Claim

NCDOT also argues that the Full Commission had jurisdiction to consider whether plaintiff had properly preserved its contribution claim. Moreover, NCDOT contends that plaintiff did not preserve its contribution claim because the wrongful death settlements did not extinguish NCDOT's liability for the deaths of Mr. Williams and Mr. Kepley. However, because we find that plaintiff's contribution claim is barred by EMA immunity, we do not reach these issues.

## III. Conclusion

For the foregoing reasons, we reverse the Full Commission's decision and order granting recovery of contribution to C.R. England and remand to the Commission for entrance of an Order dismissing plaintiff's claims for contribution.

REVERSED.

Judges COLLINS and FREEMAN concur.